# SOL J. TERRANO, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 3258

June 5, 1939.                                            91 P. (2d) 67.

248

*W. M. Kearney* and *Robert Taylor Adams,* for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General; *Ernest S. Brown,* District Attorney, and *Nash P. Morgan,* Assistant District Attorney, for Respondent:

## OPINION

By the Court, TABER, C. J.:

On the evening of January 30, 1938, about seven miles west of Reno, in Washoe County, appellant and

one Leon Hansen, riding eastward in appellant's automobile on highway No. 40, were stopped and arrested by a party of Washoe County and federal officers. The officers had been waiting for this particular car and were "looking for narcotics," but did not know whether any narcotics were in the car. Terrano and Hansen, as well as the front part of Terrano's automobile, were searched at the place they were stopped, but no narcotics were found. Terrano, Hansen and the former's car were then taken to the sheriff's office in Reno, where the car was driven into the sheriff's garage. John B. Parks, deputy sheriff of Washoe County, pursuant to orders from Ray J. Root, sheriff of said county, proceeded, according to his testimony, to search the Terrano automobile, and found, in the rear compartment thereof, a package containing four cans of opium. At this search neither of the defendants was present. The arrests and searches of Terrano, Hansen and the car were made without any warrant of arrest or search warrant. The county and federal officers suspected that the Terrano car was transporting narcotics, but the evidence is insufficient to show probable cause. The evidence indicates that there was ample time, had there been legal basis, for obtaining a search warrant. Less than six weeks after the arrests and searches, and nearly three months before the trial, Terrano moved the district court to suppress the use of said four cans of opium as evidence. This motion was denied.

After a joint trial in department No. 2 of the Second judicial district court, county of Washoe, appellant was found guilty of having narcotic drugs in his possession, an offense which constitutes a felony under the provisions of the uniform narcotic drugs act (Stats. of Nevada, 1937, chap. 23, pp. 35–46). The court advised the jury to acquit defendant Leon Hansen, and he was found not guilty. This appeal is from the judgment against Terrano, and from the order refusing to grant him a new trial.

The first three assignments of error are: "(a) The

court erred in refusing to suppress the use of the evidence obtained by federal officer McGuire assisted by the county officers. (b) The court erred in permitting the federal officer, Thomas E. McGuire, to testify with relation to any matter or evidence obtained by him in the illegal search complained of by the defendant. (c) The court erred in admitting the testimony of federal officer David F. Carpenter while acting as a federal officer." These assignments may properly be considered together.

Respondent relies upon the case of State v. Chin Gim, 47 Nev. 431, 224 P. 798. In that case cocaine and opium were seized by peace officers pursuant to a search warrant issued on an affidavit made on information and belief. The case was fully argued by able counsel, and this court unanimously held, in a carefully considered opinion prepared by DUCKER, C. J., that the drugs were properly admitted in evidence regardless of whether they had been found in the course of a search made in violation of the state and federal constitutions.

Appellant strongly urges that this court abandon the rule laid down in State v. Chin Gim, and adopt what is frequently referred to as the federal rule. It is pointed out that judicial officers, as well as other officers of this state, subscribe to an official oath that they will, among other things, support, protect and defend the constitution and government of the United States, and the constitution and government of the State of Nevada, against all enemies, whether domestic or foreign, and that they will bear true faith, allegiance and loyalty to the same, any ordinance, resolution or law of any state notwithstanding. We are also referred to that provision in section 2 of article I of the constitution of Nevada, which provides that "the paramount allegiance of every citizen is due to the federal government, in the exercise of all its constitutional powers, as the same have been, or may be, defined by the supreme court of the United States, and no power exists in the

people of this or any other state of the federal union to dissolve their connection therewith, or perform any act tending to impair, subvert, or resist the supreme authority of the government of the United States."

Appellant contends that in recent years there has been a marked tendency on the part of state courts which in the past adhered to the admissibility rule to change over to the federal or inadmissibility rule. Six state jurisdictions, counsel assert, have aligned themselves with the federal courts on this question since State v. Chin Gim was decided.

There are few questions upon which the courts are more sharply divided than that relating to the admissibility or inadmissibility of evidence illegally obtained. Annotation, 88 A. L. R. 348–369; Underhill's Criminal Evidence, Fourth Edition, secs. 796–798, pp. 1447–1455; Wharton's Criminal Evidence, Eleventh Edition, vol. 1, sec. 373, pp. 590–595; Wigmore on Evidence, Second Edition, vol. IV, secs. 2183, 2184; Wigmore on Evidence, Supplement to Second Edition, 1934, pp. 920–946.

At pages 348 and 349 of 88 A. L. R. the annotator says: "An examination of the earlier annotations, in connection with this annotation, discloses that there are at present twenty-six states which definitely follow the rule of admissibility, and eighteen which follow the rule of inadmissibility, with Alaska and the Federal courts following the latter. * * * It appears from the cases subsequent to the annotation in 52 A. L. R. 477, where a summary of jurisdiction revealed twenty-eight states following the rule of admissibility and sixteen following the rule of inadmissibility, that Pennsylvania and Vermont have definitely adopted the rule of admissibility, while South Dakota has changed to the rule of inadmissibility, and Washington, where the question had not been settled, has likewise adopted the rule of inadmissibility."

In People v. Defore, 242 N. Y. 13, 150 N. E. 585, 588, the court of appeals, in a unanimous decision, refused

to adopt the rule of inadmissibility. The opinion was written by Justice Cardozo who, after pointing out the conflict among both the courts and law writers, said: "With authority thus divided, it is only some overmastering consideration of principle or of policy that should move us to a change. The balance is not swayed until something more persuasive than uncertainty is added to the scales."

The people of the State of New York recently adopted a new constitution. A strenuous but unsuccessful effort was made in the constitutional convention to have a provision incorporated to the effect that any evidence secured or obtained in violation of the unlawful search and seizure provisions should be inadmissible upon any trial, civil or criminal, or in any proceeding whatsoever. See People v. La Combe, 170 Misc. 669, 9 N. Y. S. (2d) 877.

■ If it were perfectly apparent that the decision of this court in State v. Chin Gim was manifestly erroneous, we would feel justified in overruling it. Linn v. Minor, 4 Nev. 462. But we think the conclusion reached in the Chin Gim case was correct. And here it may be observed that no attempt has been made in this state, either by way of constitutional amendment or legislative enactment, to change the rule of admissibility enunciated in that case.

Appellant contends, however, that conceding State v. Chin Gim to have been correctly decided, there are other considerations requiring reversal of this case. One of these is that the 1937 narcotic drugs act, Stats. of Nevada, 1937, chap. 23, pp. 35–46, gives Nevada a new narcotics law similar to the federal statute, and different from the law as it existed in Nevada at the time of the Chin Gim case. Particular attention is directed to the first paragraph of section 14 of said 1937 act, which reads: "Warrant to search any store, shop, office, warehouse, dwelling house, building, vehicle, boat, aircraft or any place whatever, where there is a reasonable ground to believe that narcotic drugs are

manufactured, possessed, had under control, sold, prescribed, administered, dispensed, or compounded, in violation of this act, may issue in the same manner and under the same restrictions as provided by law for other personal property, or implements used, or evidences of crime."

We find nothing in said paragraph which forbids the admission in evidence of narcotic drugs seized in an illegal search. State v. Chin Gim was decided in 1924, and if the legislature of 1937 had desired to change the law as laid down in that case, it could easily have done so by the addition of a few words forbidding the reception in evidence of narcotic drugs seized in the course of an unlawful search.

Appellant further points out that in the Chin Gim case no federal officers participated in the search and seizure. He contends that in admitting evidence secured by illegal search and seizure the district court condoned and utilized not only the illegal acts of the state officers, but also those of federal narcotic officer McGuire, which were in violation of the fourth amendment to the United States constitution, U. S. C. A. With this contention we cannot agree. The trial court did not condone any illegal acts on the part of either the county or federal officers. The opium and the testimony of federal officer McGuire were admitted in evidence because they were competent and material on the issue of appellant's guilt or innocence of the offense charged in the information. In admitting said testimony and evidence, the trial court was simply following the rule laid down in the Chin Gim case. It would be wholly inconsistent with that rule to hold that such evidence should be excluded because federal officers participated in the unlawful search and seizure.

The fourth amendment to the federal constitution applies only to officers of the federal government and to its branches. It is usually held, even in those jurisdictions following the inadmissibility rule, that evidence obtained in an illegal search and seizure by private

individuals or by state, county or municipal officers is admissible in the federal courts. Annotation, 88 A. L. R. 348, at pages 362–365; Wharton's Criminal Evidence, Eleventh Edition, vol. 1, sec. 375. So it is ordinarily held that evidence obtained in an unlawful search and seizure by federal officers is admissible in prosecutions in the state courts. State v. Gardner, 77 Mont. 8, 249 P. 574, 52 A. L. R. 454; People v. Touhy, 361 Ill. 332, 197 N. E. 849, at page 857.

There is a line of cases holding that where state and federal officers cooperate as in a joint enterprise in obtaining evidence by illegal search and seizure, such evidence is not admissible. Annotation, 88 A. L. R. 348, at pages 363–365. Such decisions are by federal courts, or state courts following the federal rule. In State v. Hiteshew, 42 Wyo. 147, 292 P. 2, it was held that evidence seized pursuant to a valid federal search warrant is admissible in a prosecution in a state court, notwithstanding the warrant would be held illegal under the state law.

■ A state court, in construing a state constitution, is not bound by the construction of a similar provision in the federal constitution by the supreme court of the United States. State v. Aime, 62 Utah, 476, 220 P. 704, 32 A. L. R. 75; 14 Am. Jur. pp. 338, 339, n. 14.

■ As a general rule, state courts are not bound to follow federal court decisions on the question of admissibility of evidence. Kraettli v. North West Transp. Co., 166 Wash. 186, 6 P. (2d) 609, 80 A. L. R. 1520; 14 Am. Jur. 336, sec. 116, n. 14.

■ Neither this nor any other court approves any search or seizure illegal under state constitutions or the constitution of the United States; but the fact that judicial officers take the official oath hereinbefore mentioned does not require the courts of this state to follow the federal rule that evidence seized in an illegal search is not admissible. The same is true of the paramount allegiance clause of our state constitution hereinbefore

quoted. The wording of that clause and the discussions concerning it appearing in Marsh's Nevada Constitutional Debates and Proceedings (pp. 41–50, 51–53, 200, 201, 202, and 781) convince us that it cannot reasonably be construed as requiring the courts of this state to follow the federal rule making inadmissible evidence obtained in an unlawful search and seizure.

Appellant assigns as error the action of the trial court in remanding defendants Terrano and Hansen to the custody of the sheriff while they were under bail lawfully fixed by the court, and without any showing or requirement for increased bail. The record shows that, after all the evidence was in and the district attorney had made his opening argument and counsel for defendant Hansen had made his argument and before the argument of counsel for defendant Terrano, the court, just before taking the noon recess, without explanation and in the presence of the jury ordered both defendants remanded to the custody of the sheriff. Up to this time both defendants had been at liberty on bail. We quote from the record:

"The Court: (Gives the jury the usual statutory admonition.) During this recess, the jury will be placed under the charge of the officer and the defendants will be committed to the custody of the sheriff during the recess. Let the officers come forward and take charge of the jury.

"Mr. Moore: What did we understand your Honor to say, that the defendants would be committed to the custody of the officer?

"The Court: That is what I said, Mr. Moore.

"Mr. Moore: We certainly take an exception to the court's ruling on that on behalf of both of the defendants.

"The Court: Note the exception.

"(Officers sworn to take charge of the jury.)

"The Court: The jury will be placed in charge of the officers during the recess. The defendants will be

committed to the custody of the sheriff to be returned into court at two o'clock, to which time this case will be continued. Court will be in recess until further order.

"Mr. Kearney: If the Court please, I want to state that while the defendants are on bail—

"The Court: If you will look at Section 11,000 you will see why the court is doing it. You may have your exception.

"Mr. Kearney: We ask for an exception."

At the afternoon session on the same day, after the argument of counsel for defendant Terrano and the closing argument of the district attorney, and after the instructions and forms of verdict had been handed to the jury, the following proceedings took place:

"The Court: The jury are placed in charge of the officers. The defendants are remanded to the sheriff. The court-room will be cleared for the uses of the jury. Court will be in recess.

"Mr. Kearney: May we ask an exception, if the Court please, to the order remanding the defendants to the custody of the sheriff?

"The Court: That is in accordance with the statutes.

"Mr. Kearney: You say you will not allow an exception?

"The Court: Clear the court-room."

Section 11000 N. C. L. 1929, reads as follows: "When a defendant who shall have given bail shall appear for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly."

Appellant contends that said section 11000 in unconstitutional, and that appellant was entitled to bail as a matter of right by virtue of section 7, article I of the state constitution, which provides that "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption

great." Aside from and in addition to said constitutional questions, appellant further urges that the order of remandment, made at the time and under the circumstances disclosed by the record, was prejudicial error and that even if the order be considered a matter within the trial court's discretion, which appellant does not concede, it was such an abuse of discretion as to constitute reversible error.

■ It is our opinion that the district court did not commit reversible error in remanding the defendants to the custody of the sheriff at the time and in the manner shown by the record. People v. Williams, 59 Cal. 674; People v. Fidelity & Deposit Co., 107 Cal. App. 160, 290 P. 59, at page 60; People v. Nickell, 22 Cal. App. (2d) 117, 70 P. (2d) 659, at page 663; 3 Cal. Jur. 1038–1040, sec. 11; People v. Merhige, 219 Mich. 95, 188 N. W. 454, at pages 455, 456; 3 R. C. L. 15, sec. 13; 6 Am. Jur. 86, sec. 95; 6 C. J. 965, sec. 184, n. 29; 8 C. J. S., Bail, p. 51, sec. 31, notes 62, 63.

The trial court gave the following instruction, advising the jury to acquit defendant Hansen: "Lady and gentlemen of the jury, the Court deems the evidence in this case insufficient to warrant a conviction of the defendant, Leon Hansen, of the offense charged in the information, and the Court therefor advises the jury to acquit the defendant, Leon Hansen, but this advice differs from the instructions given you by the Court in this particular, you are bound to follow the instructions given by the Court but you are not bound by the advice now given you, for the statute provides that the Court may not for any cause prevent the jury from giving a verdict except as provided in certain sections which have no application to this case and you are authorized to use your own judgment in arriving at a verdict for or against the defendant, Leon Hansen."

Appellant argues that the only implication left for the jury from this instruction was that in the view of the court the testimony was insufficient to convict the

defendant Terrano. He complains that the court failed to admonish the jury that the converse of the instruction as to him should not be inferred by the jury. He contends that the instruction is contrary to the rule requiring the trial court to refrain from commenting on the evidence.

Section 11001 N. C. L. 1929, provides: "If, at any time after the evidence on either side is closed, the court deem the same insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury shall not be bound by such advice, nor must the court for any cause prevent the jury from giving a verdict, except as provided in sections 318, 319, and 320."

■ Appellant did not ask for a separate trial, and he and Hansen were tried jointly. Appellant did not request the trial court to instruct the jury that it was not to be inferred, from the instruction advising the acquittal of defendant Hansen, that the court was of the opinion that the evidence was sufficient to warrant the conviction of defendant Terrano. Among the instructions given to the jury were the following: "A defendant in a criminal action is presumed to be innocent until the contrary is proved; and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted." "In this, as in every criminal action, it devolves upon the prosecution to establish, by competent evidence, beyond a reasonable doubt, all the material facts constituting the crime of which the defendant is accused." "The court instructs the jury that if the jury finds facts established by the evidence beyond a reasonable doubt which may consistently lead to a theory of innocence as well as to a theory of guilt, you are bound to follow the theory of innocence and acquit the defendant." "The jury are the sole judges of the credibility of the witnesses, and of the weight and value to be given to their testimony." We do not believe that the instruction complained of can fairly be considered as a comment on the evidence as regards

appellant, nor that its effect would naturally be to cause the jury to infer that in the opinion of the court Terrano was guilty.

■ Contending that the evidence was insufficient to warrant his conviction, appellant points out that he was convicted on circumstantial evidence; that neither he nor Hansen had ever been in trouble before; that a charge of violating the narcotic drugs law, like a charge of rape, is calculated to prejudice people upon the mere mention of the offense; that the officers found no drugs when the search was made on the highway when appellant was present, and that it was after the car had been driven into the sheriff's garage in Reno, and when neither of the defendants was present, that the officer claimed to have found the package containing the four 5-tael cans of opium.

Appellant admitted that the car was his. The evidence on the part of the state tended to show that defendants left Reno early in the morning of January 30, 1938; that upon being arrested about noon at Berkeley, California, for speeding, a thorough search of the car was made, but no narcotics were found; that upon being released on bail, defendants crossed the bay bridge and proceeded immediately to the Turf Club at 18 Turk street in San Francisco, where they arrived at about 1: 25 p. m.; that Terrano entered the Turf Club, remained there about five minutes or so, then drove with Hansen in his car to his mother's home on Larkin street, San Francisco; that before entering the home, Terrano opened the rear compartment of his car and placed something therein; that at 2: 20 p. m. the defendants drove away from the home on Larkin street, and proceeded on their way back to Reno; that the front part only of the car was searched by the officers when it was stopped on the highway about seven miles west of Reno as aforesaid; that upon arrival at Reno both defendants were taken into the sheriff's office, and the car driven into the sheriff's garage, where officer Parks found the opium in the car's rear compartment.

■ As this is a criminal case, and there was substantial evidence to support the verdict of the jury, it will not be disturbed, nor the judgment set aside, because of insufficiency of evidence to warrant appellant's conviction.

The other assignments of error have been considered by the court, but in our opinion they are without merit and do not require discussion.

The judgment and order appealed from are affirmed.

COLEMAN, J., died after this case was submitted for decision, but before this opinion was written or filed.

ORR, J., did not participate.