In the Matter of DIANE P. WESTCHESTER COUNTY S.P.C.C., Appellant; ALEJA P., Respondent.

Second Department, October 28, 1985

### APPEARANCES OF COUNSEL

*Kenneth Ellman* for appellant.

*Thomas Hunter* for respondent.

### OPINION OF THE COURT

LAZER, J.

The principal issue here is whether there must be suppression of illegally seized evidence when the matter to be tried is a child protective proceeding under Family Court Act article 10. Upon weighing the likely deterrent effect of the exclusionary rule against its detrimental impact upon the fact-finding process and the State's enormous interest in protecting the welfare of children, we conclude that the rule should not be applied in such proceedings. Rather, its deterrence purpose will be adequately served by the fact that any evidence seized pursuant to an illegal search will be inadmissible in any related criminal proceeding.

The events that precipitated this proceeding began on September 9, 1983, when respondent's 13-year-old daughter entered the offices of the Ossining Police Department and complained that her mother had struck her with a broom. Based on this complaint, at approximately 3 o'clock in the morning of September 10, 1983, a uniformed police officer and several representatives of petitioner Westchester County S.P.C.C. went to respondent's apartment. According to respondent, they awakened her

from a sound sleep by banging loudly on her door, obtained her signature on a form consenting to the temporary removal of her daughter, and then undertook a warrantless search of the apartment without obtaining respondent's consent. During the course of this search, they uncovered and seized a broom and a shoe, one or both of which had allegedly been used to beat the child.

Petitioner commenced the instant child protective proceeding several days later. The Westchester County Department of Social Services, which at that time had temporary custody of the child, was allowed to intervene *amicus curiae*. Upon the Department's application, it was permitted to return respondent's daughter to her because the girl wished to go home and was in no immediate physical danger. In a subsequent order, the court also granted the respondent's motion to strike certain parts of the petition and to suppress the broom and the shoe seized by petitioner's agents.

On its appeal from the latter order, petitioner raises several points but the only issue that warrants serious discussion is whether the exclusionary rule should be applied in a child protective proceeding. The dispute over the validity of respondent's consent to the temporary removal of her child is now moot since the child has since been returned to respondent's custody by the appropriate agency. As to the controversy over the earlier child abuse reports, they were not admissible pursuant to Family Court Act § 1046 (a) because they had previously been determined to be unfounded and were expunged in accordance with Social Services Law § 422 (5). Moreover, petitioner lacks standing to challenge the propriety of that expungement because it has no legally cognizable interest in such reports (*cf.* Social Services Law § 422 [8]; *see also, Matter of Monroe v Blum,* 90 AD2d 572). This does not mean, of course, that the alleged acts of abuse underlying those reports may not be proven by appropriate and admissible evidence. Finally, we need not decide whether the Family Court erred in refusing to hold a hearing on the issue of consent to the search in light of our determination that in any event the evidence need not be suppressed.

The exclusionary rule was developed and is most often relevant in criminal proceedings (*see, Mapp v Ohio,* 367 US 643), while a child protective proceeding is civil in nature (*People v Smith,* 62 NY2d 306). That is not completely determinative of the issue, however, for the exclusionary rule has upon occasion been applied in certain types of quasi-criminal and civil proceedings (*see, e.g., Plymouth Sedan v Pennsylvania,* 380 US 693;

*Monserrate v Upper Ct. St. Book Store,* 49 NY2d 306; *People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76; *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647, *cert denied* 396 US 840; *Matter of McPherson v New York City Hous. Auth.,* 47 AD2d 828). Nonetheless, it remains true that "[a] violation of a constitutional right may have different consequences depending upon whether the evidence obtained in violation of that right is attempted to be used in criminal or noncriminal proceedings" (*People ex rel. Maiello v New York State Bd. of Parole,* 65 NY2d 145, 146).

In determining the applicability of the exclusionary rule, the appropriate inquiry "is whether, accepting the obvious detrimental impact upon the truth-finding process which the exclusionary rule often produces, its accompanying deterrent effect is sufficiently probable to justify its application" (*Matter of Mancini v Codd,* 46 NY2d 12, 31). In the course of this inquiry, consideration must be given to such factors as the nature of both the right sought to be protected and the State's interest in the matter, the purpose of the proceeding and the severity of the potential sanctions that could result from the proceeding, and the purpose of the illegal search and its relationship to the proceeding in which the rule is sought to be invoked (*see, e.g., Monserrate v Upper Ct. St. Book Store, supra; Matter of Finn's Liq. Shop v State Liq. Auth., supra,* at pp 653-655; *Matter of Leogrande v State Liq. Auth.,* 25 AD2d 225, *revd on other grounds* 19 NY2d 418; *see also, Tirado v Commissioner of Internal Revenue Serv.,* 689 F2d 307, *cert denied* 460 US 1014; *Matter of Mancini v Codd, supra,* at pp 31-32). Applying these principles, we conclude that the exclusionary rule should not be utilized in a child protective proceeding.

Undisputably, the question is a close one. We note that petitioner's agents entered respondent's home to obtain her consent to the temporary removal of the child. Thus, the subsequent search was directly related to the child protective proceeding. The existence of such a relationship is a factor which ordinarily militates in favor of application of the exclusionary rule (*compare, Matter of Finn's Liq. Shop v State Liq. Auth., supra, with Matter of Mancini v Codd,* 46 NY2d 12, 31-32, *supra*). We now hold, however, that the State's overwhelming interest in protecting and promoting the best interests and safety of minors in a child protective proceeding far outweighs the rule's deterrent value.

Child abuse has become an ever greater problem in our society in recent years as the number of cases reported continues to

increase at a precipitous rate (NYS Dept of Social Servs, Central Child Abuse Maltreatment Register, Table of Reports Registered, 1974-1984; *New York Times,* Feb. 17, 1985, § 1, p 30, col 1; Memorandum of Legislative Representative of City of NY on Persons Required to Report Cases of Suspected Child Abuse, 1984 McKinney's Session Laws of NY, at 3486). Principles of law designed to protect the citizenry from improper police activities should not be applied without regard to the grim realities that permeate certain types of situations. A child abused by a parent is bereft of any refuge and is perhaps the most helpless and powerless of all victims, betrayed by the very person to whom he or she would most naturally turn for succor. We deal here not with theoretical quibbles over abstract social concepts, but with the urgent plight of those who most need the protective hand of the State. We also emphasize that the effects of applying the exclusionary rule in a child protective proceeding would potentially be immeasurably more devastating than is true of the typical criminal prosecution. Normally, in a criminal prosecution, if application of the rule prevents the conviction of a guilty person, the result will be that a past crime goes unpunished. It is a price society has been willing to pay to prevent unwarranted intrusions upon person or property. Here, however, if application of the rule leads to an erroneous finding that there has been no abuse, the result may be to condemn an innocent child to a life of pain and fear or even to death (*see generally, Matter of Tammie Z.,* 66 NY2d 1). Where the result would be so abhorrent, utilization of a rule normally intended to provide protection from illegal police activity is not justifiable.

Nor does the potential impact upon a parent of a child protective proceeding require application of the rule. The possible consequences range from an order placing the child under the supervision of a child protective agency while remaining in parental custody to temporary removal of the child for an initial period of up to 18 months (Family Ct Act §§ 1052, 1055). Certainly, such potential interference in family relationships evokes the need for limited constitutional protections, albeit not to the same extent as would a proceeding to permanently remove the child (*Matter of Tammie Z., supra; see generally, Santosky v Kramer,* 455 US 745; *People v Smith,* 62 NY2d 306, 312, *supra; Matter of Ella B.,* 30 NY2d 352, 356-357). These potential consequences, however, are not intended to punish the parent, but rather, to protect the child. The effect on the parent is but a necessary collateral result of the need to safeguard the child. As we have recently stated: "The sustaining of a petition in these proceedings does not subject the respondent to a crimi-

nal penalty. The object * * * is merely to determine whether there is a need to remove the child from the parental home and place him or her in a safer and more suitable environment" (*Nelson v Dufficy,* 104 AD2d 234, 236). The Legislature has specifically declared that the purpose of a child protective proceeding is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" and to act "on behalf of a child so that his needs are properly met" (Family Ct Act § 1011; *see, People v Smith, supra,* at p 311). On balance, the State's interest in protecting abused children and the unthinkable consequences to the children if they are left in the hands of abusive parents far outweigh the potential consequences to the parents.

Of course, child abuse is also a crime and there exists the possibility of a parallel or subsequent criminal prosecution based on the same underlying acts (*see,* Family Ct Act § 254 [b]; § 1013 [b]; § 1014; Penal Law § 260.10; *People v Smith, supra*). This is not relevant to the instant inquiry, for such a criminal prosecution is a completely independent proceeding. The use of illegally seized evidence in a child protective proceeding would have no impact upon a related criminal prosecution because normal application of the exclusionary rule would in any event preclude use of that evidence in the criminal prosecution. Thus, the potential for related criminal charges does not serve as a justification for application of the exclusionary rule in a child protective proceeding.

In short, we conclude that because a child protective proceeding itself is not punitive in nature and the deterrent effect of the exclusionary rule will be adequately served by precluding use of the evidence in any related criminal proceeding, the State's interest in protecting its children mandates the admissibility of relevant evidence seized during an illegal search. As the California Court of Appeal declared in reaching the same result, the possibility that extending the exclusionary rule to such proceedings "might result in the suffering or deprivation of innocent children is too high a price to pay for any slight additional deterrent effect" (*In re Robert P.,* 61 Cal App 3d 310, 321, 132 Cal Rptr 5, 12, *appeal dismissed sub nom. Potter v Department of Social Servs.,* 431 US 911).

Accordingly, the order appealed from should be modified, on the law, by deleting therefrom the provision granting that branch of respondent's motion as sought suppression of evidence and substituting therefor a provision denying that branch of the

motion, and, as so modified, the order should be affirmed, without costs or disbursements.

MOLLEN, P. J., THOMPSON and BRACKEN, JJ., concur.

Order of the Family Court, Westchester County, dated December 12, 1983, modified, on the law, by deleting the provision which granted that branch of the respondent mother's motion as sought the suppression of evidence, and substituting therefor a provision denying that branch of the motion. As so modified, order affirmed, without costs or disbursements.