*1177 OPINION
By the Court,
Maupin, J.:
In August 1992, appellant Randy Lane (“Lane”), a former Allstate Insurance Company employee, filed a complaint against Allstate Insurance Company and Allstate officials Thomas Coker, Robert Touchette, and William Monie (collectively “Allstate”). The complaint alleged causes of action for breach of contract and/or constructive discharge, breach of the implied covenant of good faith and fair dealing, fraud, breach of contract, and intentional infliction of emotional distress. Lane amended his complaint in April 1993, alleging essentially the same causes of action.[1]
In May 1993, Allstate filed a motion to dismiss (or in the alternative for summary judgment), a motion for sanctions, and a motion to stay the proceedings pending entry of final judgment and termination of a stay in the federal action. Allstate alleged that Lane illegally tape-recorded over 700 telephone conversations with two of the individual defendants and at least 180 witnesses in violation of NRS 200.620, and that Lane’s tape-recording rendered it impermissible for him or any of the tape-recorded witnesses to testify in support of the allegations in Lane’s amended complaint.
The district court entered an order interpreting NRS 200.620 to require two-party consent to tape-recording of any wire communication. Pursuant to NRS 179.505, the district court suppressed the tapes, the testimony regarding the personal recollections of the taped conversations of the parties to the conversations, and all evidence obtained from the tapes. The district court also granted *1178 Allstate’s motion for sanctions and dismissed Lane’s complaint with prejudice. Lane appeals from the district court’s order.
On appeal, Lane argues that NRS 200.620 does not proscribe the tape-recording of one’s own telephone conversations. He argues that the statute prohibits a third party from intercepting a communication between two other people unless one of those persons consents and (1) a court order is obtained in advance, or (2) an emergency situation exists and a court subsequently ratifies the interception.

DISCUSSION

This case raises the issue of the scope of NRS 200.620, which makes recording a telephone conversation a criminal offense unless certain criteria are met. NRS 200.620 provides, in pertinent part:
1. Except as otherwise provided in NRS 179.410 to 179.515 inclusive, 209.419 and 704.195, it is unlawful for any person to intercept or attempt to intercept any wire communication unless:
(a) The interception or attempted interception is made with the prior consent of one of the parties to the communication; and
(b) An emergency situation exists and it is impractical to obtain a court order as required by NRS 179.410 to 179.515, inclusive, before the interception, in which event the interception is subject to the requirements of subsection 3.[2]
(3) Any person who has made an interception in an emergency situation as provided in paragraph (b) of subsection 1 shall, within 72 hours of the interception, make a written application to a justice of the supreme court or district judge for ratification of the interception. . . .
(Footnote added.)
Thus, single party interception must be judicially pre-approved or judicially ratified where an emergency exists to make pre-approval impractical. NRS 179.430 defines “intercept” as “the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device or of any sending or receiving equipment.’ ’ The taping of a tele *1179 phone conversation is clearly the aural acquisition of the contents of a wire communication through the use of a mechanical device or receiving equipment. In Rupley v. State, 93 Nev. 60, 560 P.2d 146 (1977), this court held that a police officer’s taping of the contents of a telephone conversation by attaching a suction cup recording device to the receiver of an informant’s telephone without court authorization illegally intercepted the conversation. Id. at 61, 560 P.2d at 147. Furthermore, courts interpreting the federal wiretap statute, upon which the Nevada statute is based, have consistently held that the tape-recording of telephone conversations constitutes an intercept. See, e.g., United States v. Turk, 526 F.2d 654, 657 (5th Cir. 1976).
The plain language of NRS 200.620 belies Lane’s argument that this statute does not prohibit taping one’s own telephone conversations. The statute applies to “any person,” subject only to the limitations which have no application here. {See note 2.) No exceptions are made for private parties. The legislative intent to prohibit the taping of telephone conversations with the consent of only one party is made clear by comparing the language of NRS 200.620 with the language of NRS 200.650. In NRS 200.650, the legislature prohibited surreptitious intrusion upon in-person, private conversations by means of any listening device, but specifically added the language “unless authorized to do so by one of the persons engaging in the conversation.” If the legislature had wanted to create that limitation in NRS 200.620, it would have done so. It seems apparent that the legislature believed that intrusion upon Nevadans’ privacy by nonconsensual recording of telephone conversations was a greater intrusion than the recording of conversations in person.
The legislative intent is even clearer when one compares Nevada and federal statutes. In 1973, the Nevada legislature made substantial amendments to NRS 200.620 through NRS 200.690, in order to bring Nevada law somewhat in conformity with federal wiretap statutes. However, the legislature did not adopt one important provision in the federal wiretap statute, which distinguishes Nevada law from federal law. The federal code provides an exception to the statute prohibiting interception of wire communications in 18 U.S.C. § 2511(2)(d) (1970), which states:
It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless the communication is intercepted for the purpose of committing *1180 any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.
(Emphasis added.) It must be presumed that the exclusion of this provision in the Nevada statute was deliberate and was intended to provide a different result from that achieved under the federal wiretap statute.
Finally, the testimony and discussions in the 1985 legislative session resolve any last doubts about the legislative intent. The legislature proposed A.B. 188, an amendment to NRS 179.410, NRS 179.515, and NRS 200.620, in the 1985 session. This amendment would have allowed one-party consent for recording of telephone conversations by law enforcement officers. At the hearings on A.B. 188, the Attorney General, the Washoe County District Attorney, and many other law enforcement officials testified in favor of the bill. See Hearing on A.B. 188 Before the Assembly Judiciary Comm., 63rd Leg. (Nev., March 8, 1985), reprinted in Legislative History of A.B. 188, at 957-75; Hearing on A.B. 188 Before the Senate Judiciary Comm., 63rd Leg. (Nev., May 1, 1985), reprinted in Legislative History of A.B. 188, at 1837-57. The legislators and those testifying repeatedly explained and assumed in their discussions that the present law prohibits all recording of one’s own telephone conversations, unless it is with judicial approval or ratification. Id. Those who testified in the bill’s favor tried to convince the legislature that allowing one party to record his or her own telephone conversations should be allowed as that was not the same type of invasion of privacy as a wiretap by a third person. Id. However, legislators continued to express concern over potential abuses when judicial oversight is lacking. Id. The legislature did not pass the bill, even though the one-party consent would have been limited to law enforcement officers pursuing investigations. This failure to pass A.B. 188 speaks eloquently of the legislative intent to prohibit the unauthorized interception of wire communications.
Thus, we conclude that the district court correctly held that Lane violated the provisions of NRS 200.620 when he tape-recorded telephone conversations with employees of his former employer.
Our next inquiry concerns the effect of the tape-recording on Lane’s action against his former employer. The district court dismissed Lane’s complaint stating:
Plaintiff’s misconduct has directly affected the discovery process and is an abuse of the litigation process. In an attempt to gather evidence, Plaintiff willfully tape recorded conversations without receiving the consent of any other participant. By engaging in such conduct, Plaintiff violated *1181 Nevada law and has forever tainted these proceedings. Continued discovery in the instant action is now a laborious task. In order for the Court to determine which evidence will be suppressed, the identity of each of the parties to the taped conversations and the subject matter of the conversations will have to be identified. These additional requirements constitute an inefficient use of judicial resources and place a significant burden on Defendants and their counsel. Furthermore, since much of the evidence in this case has been tainted by Plaintiff’s misconduct, the Court finds it highly unlikely that sufficient evidence exists to sustain Plaintiffs claim. Finally, dismissal of Plaintiff’s claim will act as a deterrent to other litigants who frustrate the discovery process by attempting to gather evidence through such questionable and dubious means.[3]
Courts have inherent equitable powers to dismiss actions for abusive litigation practices. Young v. Johnny Ribeiro Building, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). This court will not reverse a particular sanction imposed absent a showing of abuse of discretion. Id. However, where the drastic sanction of dismissal with prejudice is imposed, a somewhat heightened standard of review will apply. Id. In the present circumstances, Lane’s conduct in taping the conversations was intentional and illegal. This is certainly the basis for the district court’s decision to strike Lane’s complaint. However, based upon our inability to reach agreement on a proper interpretation of NRS 200.620, it would be unfair to conclude that, although Lane’s conduct was intentional and, as we have now determined illegal, Lane intended to violate state law. Thus, the judgment of the district court is reversed and remanded with instructions that the claim proceed to trial, but that all of the evidence gathered via the interceptions be excluded and no reference by Lane to any statements made during the interceptions will be allowed.[4]

 Lane initially filed a complaint in federal district court in January 1992 for age discrimination under the Age Discrimination in Employment Act (“ADEA”), the Employee Retirement Income Security Act (“ERISA”), and for relief under Nevada state law. Iñ May 1992, the federal district court dismissed Lane's state law claims without prejudice, retained Lane's ADEA claim, and denied Allstate's motion to dismiss.
In April 1993, the federal magistrate concluded that under Nevada law, Lane had unlawfully tape-recorded numerous conversations with defendants and witnesses and recommended that the federal district court dismiss the action in its entirety. In September 1993, the federal district court denied both Allstate's motion for sanctions, in the form of a dismissal, and Lane’s motion for voluntary dismissal. The federal district court noted that Lane did not make the tapes for a tortious purpose, that he was a party not acting under color of law, and that he consented to the tape recording. Therefore, his tape recording did not violate federal wiretapping laws; his actions fell within the exception provided for by 18 U.S.C. § 2511(2)(d)(1997).

 The exceptions in NRS 179.410 to NRS 179.515, NRS 209.419 and NRS 704.195 relate to interception authorized by a judge or justice when requested by the attorney general or district attorneys for investigations by law enforcement agencies, interception of offenders’ communications in jails or prisons, and interception by public utilities concerning emergency or service outage.

 The district court relied in part on NRS 179.505 in suppressing the taped conversations. This provision only applies to criminal actions under Title 14 of the Nevada Revised Statutes, Procedure in Criminal Cases. This, however, of itself, would not require reversal. See Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987).

 Lane may not, in any fashion, use or refer to the information gathered via the taped conversations. Further, if it appears he is relying on the tapes to elicit testimony from any witness, the defendants may apply to the district court for protective relief.