133 Nev., Advance Opinion 94

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LYUDMYLA ABID,
Appellant,
vs.
SEAN ABID,
Respondent.

No. 69995

FILED

DEC 07 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order modifying child custody. Eighth Judicial District Court, Family Court Division, Clark County; Linda Marquis, Judge.

*Affirmed.*

Radford J. Smith, Chartered, and Radford J. Smith, Kimberly A. Medina, and Garima Varshney, Henderson,
for Appellant.

Black & LoBello and John D. Jones, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

In this child custody proceeding, a father surreptitiously recorded his child and ex-wife's conversations by hiding a recording device

in the child's backpack. Because neither the child nor the mother consented to this recording, the father's actions likely violated NRS 200.650, which prohibits the surreptitious recording of nonconsenting individuals' private conversations. The question presented is whether the district court abused its discretion by providing the recordings to a psychologist appointed by the court to evaluate the child's welfare. We hold that the district court properly exercised its discretion in determining that the recordings would assist the expert in forming her opinion. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

Sean and Lyudmyla Abid divorced in 2010. Their stipulated divorce decree awarded them joint legal and joint physical custody of their one-year old child. In 2015, Sean moved to modify those terms to get primary physical custody.

On at least two separate occasions, Sean placed a recording device in the child's backpack as the child traveled to Lyudmyla's home. The child and Lyudmyla were unaware of the device, and neither consented to Sean recording their conversations. Sean then edited the recordings, removed what he claims to be irrelevant material, and destroyed the originals. Claiming that the recordings demonstrated Lyudmyla's attempts to manipulate the child, Sean moved to admit them into evidence in the custody proceeding. Lyudmyla objected on grounds that Sean violated NRS 200.650 in recording her and the child's private conversations.

The district court found that Sean likely violated NRS 200.650 and denied Sean's motion to admit the recordings into evidence. Nonetheless, the court provided the recordings to a psychologist, Dr. Holland, whom the court had appointed to interview and evaluate the child.

 

The court permitted Dr. Holland to consider the recordings as she formulated her opinions.

At the evidentiary hearing, Dr. Holland testified that Lyudmyla's behavior was "creating confusion, distress, and divided loyalty" in the child. She based her opinion in part on the recordings, as well as interviews with the child, Sean, and Lyudmyla, email and text communications between Sean and Lyudmyla, and the parties' pleadings.

After considering Dr. Holland's testimony and other evidence presented, the district court found that, "[a]s a direct result of [Lyudmyla's] direct and overt actions, the child is experiencing: confusion; distress; a divided loyalty between his parents; and a decreased desire to spend time with [Sean]." Consequently, the court determined it was in the child's best interest that Sean be awarded primary physical custody. Lyudmyla appeals from that order.

## DISCUSSION

Lyudmyla argues that the district court abused its discretion by allowing Dr. Holland to consider evidence that Sean obtained in violation of NRS 200.650. We disagree. Even assuming that Sean violated NRS 200.650 in producing the recordings,[1] the court did not abuse its discretion in providing them to Dr. Holland.

*An expert witness in a child custody proceeding may consider evidence obtained in violation of NRS 200.650*

Lyudmyla argues that Dr. Holland cannot consider evidence obtained in violation of NRS 200.650, because NRS 50.285(2) allows experts to consider inadmissible evidence only if the evidence is "of a type

---

[1]We express no opinion as to the legality of Sean's actions.

reasonably relied upon by experts," and psychologists do not normally rely upon recordings that are produced illegally.

We review a district court's evidentiary decision for an abuse of discretion, but, to the extent the decision "rests on a legal interpretation of the evidence code," we review that legal interpretation de novo. *Davis v. Beling*, 128 Nev. 301, 311, 278 P.3d 501, 508 (2012) (internal quotation marks omitted). Here, we review for an abuse of discretion the district court's decisions to provide the recordings to Dr. Holland and to deny Sean's motion to admit. But we review the court's legal conclusions concerning admissibility de novo.

NRS 200.650 prohibits "intru[sions] upon the privacy of other persons by surreptitiously . . . recording . . . any private conversation engaged in by the other persons . . . unless authorized to do so by one of the persons engaging in the conversation." Sean does not dispute that he surreptitiously placed a recording device in the child's backpack without the child's or Lyudmyla's consent. Despite finding that Sean violated NRS 200.650 in producing the recordings, the district court provided them to Dr. Holland to consider in forming her opinion.

NRS 50.285(2) allows expert witnesses to consider inadmissible evidence so long as it is "of a type reasonably relied upon by experts in forming opinions or inferences upon the subject." We reject Lyudmyla's argument because it shifts NRS 50.285(2)'s focus on the "type" of evidence at issue to the manner in which the evidence was procured. There is no doubt that Sean's evidence—a contemporaneous recording of a parent's unfiltered interactions with a child—is the type of evidence a psychologist would consider in forming an opinion as to the child's welfare. *See, e.g., In re Marriage of Karonis*, 693 N.E.2d 1282, 1286 (Ill. App. Ct. 1998)

("Reviewing the [allegedly illegally acquired] tapes materially advanced the [expert witness]'s ability to determine and defend the child's best interests here."). Under NRS 50.285(2), then, Dr. Holland was permitted to consider Sean's recordings.

Of course, NRS 50.285(2) cannot permit what another statute prohibits. But we find no such prohibition in our statutory scheme. While NRS 179.505(1) authorizes a criminal defendant to move to suppress illegal recordings, we find no analogous provision in the civil context. Unlike the analogous federal wiretap law,[2] NRS 200.650 is silent regarding evidence and admissibility. *See* NRS 200.690(1) (enforcing NRS 200.650 exclusively with criminal prosecution and civil damages). We will not read a broad suppression rule into NRS 200.650, especially when our Legislature has proven in the criminal context that it knows how to write one. Prohibiting Dr. Holland from considering this evidence would be conflating criminality with inadmissibility, which is left to the sound discretion of the court. *See* NRS 48.025; NRS 48.035.

Furthermore, prohibiting Dr. Holland from considering this evidence would do little to effectuate NRS 200.650's express purpose of protecting an individual's privacy because, in this context, the expert is already inquiring into private details of the relationship between parent and child. NRS 200.650's prohibition against "disclos[ing]" the contents of illegal recordings cannot reasonably be read to prohibit a court-appointed expert from considering such evidence in a child custody case, wherein the

---

[2]18 U.S.C. § 2515 (2012): "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence *in any trial, hearing, or other proceeding* . . . ." (emphasis added).

Supreme Court
of
Nevaoa

(O) 1947A

5

"[c]hild's best interest is paramount." *Bluestein v. Bluestein*, 131 Nev., Adv. Op. 14, 345 P.3d 1044, 1048 (2015); *see also* NRS 125C.0045(2).

Nor does our caselaw support Lyudmyla's position. This court has only once addressed the proper remedy in a civil action when a litigant attempts to use illegally acquired evidence to gain a litigation advantage. In *Lane v. Allstate Insurance Co.*, Lane illegally recorded phone conversations in violation of NRS 200.620 to obtain evidence to support tort and contract claims against his former employer.[3] 114 Nev. 1176, 1177, 969 P.2d 938, 939 (1998). The district court sanctioned Lane by dismissing his complaint. *Id.* On appeal, this court held that dismissal was too extreme a litigation sanction and instead sanctioned Lane by prohibiting him from using the information contained within the recordings "in any fashion." *Id.* at 1181 n.4, 969 P.2d at 941 n.4. In sanctioning Lane, however, this court did not create a bright line rule that illegally obtained evidence cannot be used in civil proceedings; rather, we held that suppressing Lane's evidence was an appropriate sanction in that particular case. *Id.* at 1181, 969 P.2d at 941.

However, a child custody proceeding is readily distinguishable from *Lane*. Whereas *Lane* was a civil suit for damages, a child custody proceeding is no "mere adversary proceeding between plaintiff and defendant." *Munson v. Munson*, 166 P.2d 268, 271 (Cal. 1946). Here, the interests of a nonlitigant child are at stake. Prohibiting an expert from considering evidence punishes that child by hindering the expert's inquiry

---

[3]We note that, whereas Lane's telephonic recordings implicated NRS 200.*620*, Sean's in-person recordings implicated NRS 200.*650*. For purposes of this opinion, however, this is a distinction without a difference.

into the child's best interests. It is sanctioning the child for the alleged crime of his parent.

In affirming the lower court's decision, we by no means condone Sean's actions. Rather, we have determined that the potential deterrent effect of ignoring Sean's evidence is outweighed by the State's "overwhelming interest in promoting and protecting the best interests of its children." *Rogers v. Williams*, 633 A.2d 747, 749 (Del. Fam. Ct. 1993). We note that there are numerous ways to deter parents in Sean's position without risking harm to an innocent minor. *See id.* at 748 (rejecting the argument "that by admitting evidence that was obtained illegally, the Court is giving its approval to lawlessness"). Sean could be prosecuted for committing what amounts to a category D felony. *See* NRS 200.690(1)(a); *cf. Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it."). NRS 200.690(1)(b) creates a private right of action for Sean's ex-wife and child to sue for Sean's intrusion into their privacy. The court can fashion a litigation sanction, such as a fine, that does not affect the child's interests. *See, e.g., Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990) (holding that courts have "inherent equitable powers" to sanction parties for "litigation abuses") (internal quotation marks omitted). Finally, and perhaps most importantly, potential spies in Sean's position may be deterred by the simple fact that a parent's lawless invasion into his child's and ex-wife's privacy reflects

SUPREME COURT
OF
NEVADA

(O) 1947A

poorly on his parental judgment and may be factored into the court's decision when determining child custody.[4]

*There is no per se rule that evidence obtained illegally is inadmissible in a child custody proceeding*

A premise of Lyudmyla's argument is that illegally obtained evidence is inadmissible in a child custody proceeding. That premise is unfounded—there is no per se rule of inadmissibility in this context, and we decline to adopt one. A district court has discretion in a child custody proceeding to determine whether to admit evidence obtained in violation of NRS 200.650.

Unless a statute prohibits the admission of relevant evidence, it is presumed admissible. NRS 48.025(1). As analyzed above, NRS 200.650 contains no language to rebut that presumption. A per se rule of inadmissibility would sweep broader than the exclusionary rule in the criminal context,[5] and it would be particularly inappropriate here because

---

[4]This statement does not affect our holding in *Sims v. Sims* "that a court may not use changes of custody as a sword to punish parental misconduct." 109 Nev. 1146, 1149, 865 P.2d 328, 330 (1993). But *Sims* does not prevent a court from considering how a parent's conduct reflects on their judgment.

[5]NRS 179.505 permits an aggrieved party in a criminal proceeding to move to suppress illegally intercepted recordings; it does not render such recordings per se inadmissible. *Cf. Utah v. Strieff*, ___ U.S. ___, 136 S. Ct. 2056, 2059 (2016) (creating the attenuation exception to the exclusionary rule); *United States v. Patane*, 542 U.S. 630, 642 (2004) (holding that the exclusionary rule does not apply to physical evidence obtained as a result of questioning that violated *Miranda v. Arizona*, 384 U.S. 436 (1966)); *Harris v. New York*, 401 U.S. 222, 226 (1971) (allowing evidence obtained in violation of *Miranda* to be admitted for impeachment purposes); *Walder v. United States*, 347 U.S. 62, 65 (1954) (same for evidence obtained in violation of the Fourth Amendment).

a district court "needs to consider as much relevant evidence as possible when deciding child custody." *Rogers*, 633 A.2d at 749 (admitting allegedly illegally obtained evidence in a child custody proceeding); *accord Munson*, 166 P.2d at 271 ("[T]he controlling rights are those of the minor child and of the state in the child's welfare."); *Lee v. Lee*, 967 S.W.2d 82, 85 (Mo. Ct. App. 1998) ("Even evidence obtained fraudulently, wrongfully, or illegally is admissible.").

This presumption of admissibility dates back to the common law, wherein admissibility was not affected by the illegal means used to acquire evidence. *See, e.g., Terrano v. State*, 59 Nev. 247, 256, 91 P.2d 67, 70 (1939), *overruled in part by Whitley v. State*, 79 Nev. 406, 412 n.5, 386 P.2d 93, 96 n.5 (1963). While *Mapp v. Ohio* altered this common law rule by excluding evidence illegally acquired by the government in criminal cases, 367 U.S. 643 (1961), *Mapp*'s exclusionary rule does not extend to evidence illegally acquired by a *private individual* in a *civil case*. In *Sackler v. Sackler*, for example, a husband trespassed into his wife's home to obtain evidence relevant to a divorce proceeding. 203 N.E.2d 481, 482 (N.Y. 1964). The New York Court of Appeals rejected the wife's argument that *Mapp* rendered the illegally acquired evidence inadmissible because *Mapp*'s exclusionary rule was meant to deter governmental intrusions; absent a governmental invasion, suppressing evidence would frustrate courts' search for truth. *Id.* at 483 ("[J]udicial rules of evidence were never meant to be used as an indirect method of punishment of trespassers and other lawless intruders." (internal quotation marks omitted)). Thus, the husband's illegally acquired evidence was admissible. *Id.*

Similarly, in the related child abuse/neglect context, courts routinely hold that evidence obtained in violation of the Fourth Amendment

is admissible because "the substantial social cost of ignoring children's safety" exceeds "the minimal additional deterrence achieved by applying the exclusionary rule." *In re W.L.P.*, 202 P.3d 167, 173 (Or. 2009); *accord In re Mary S.*, 230 Cal. Rptr. 726, 728 (Ct. App. 1986) ("[T]he potential harm to children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence unlawfully seized." (internal quotation marks omitted)); *In re Diane P.*, 494 N.Y.S.2d 881, 884 (App. Div. 1985) ("[T]he State's overwhelming interest in protecting and promoting the best interests and safety of minors in a child protective proceeding far outweighs the rule's deterrent value."); *State ex rel. A.R. v. C.R.*, 982 P.2d 73, 79 (Utah 1999) ("Whatever deterrent effect there might be is far outweighed by the need to provide for the safety and health of children in peril.").

A per se rule of inadmissibility would force the district court to close its eyes to relevant evidence and possibly place or leave a child in a dangerous living situation. In this instance, the illegally acquired recordings contained no dispositive evidence—they reflected at most one parent's attempt to alienate the child from the other parent. More concerning, however, would be a scenario in which an illegally obtained recording contains evidence of physical or sexual abuse of a child. Categorically excluding such evidence would clearly be against the best interests of the minor and, therefore, in contravention of NRS 125C.0045(2).

Thus, because the recordings' alleged illegality did not render them inadmissible, the court had "broad discretion" in performing its evidentiary gatekeeping function to rule on their admissibility. *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 492, 117 P.3d 219, 226 (2005) (internal quotation marks omitted). To the extent that the district court

excluded Sean's recordings based on its belief that the law *required* exclusion of illegally obtained evidence, that ruling was erroneous. Even so, that error would be harmless because it did not affect the court's decision to award Sean primary custody. *See* NRCP 61.

*The district court did not otherwise abuse its discretion in awarding Sean primary custody*

Lyudmyla presented two additional arguments on appeal: (1) that the district court abused its discretion by misinterpreting and relying on Dr. Holland's opinion and interviews with the child, and (2) that the district court ordered the change in custody simply to punish Lyudmyla, in violation of *Sims*, 109 Nev. at 1149, 865 P.2d at 330.

After a careful review of the record, we find these claims to be without merit. The district court properly exercised its discretion in weighing the evidence presented over the course of the two-and-one-half day evidentiary hearing. The district court's factual findings support its determination as to the child's best interest.

## CONCLUSION

In a child custody setting, the "[c]hild's best interest is paramount." *Bluestein*, 131 Nev., Adv. Op. 14, 345 P.3d at 1048. The court's duty to determine the best interests of a nonlitigant child must outweigh the policy interest in deterring illegal conduct between parent litigants. Accordingly, the district court did not abuse its discretion in providing the recordings to the expert because reviewing them furthered the expert's

evaluation of the child's relationship with his parents and aided the district court's determination as to the child's best interest. Accordingly, we affirm.

_____, J.
Stiglich

We concur:

_____, C. J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Pickering

DOUGLAS, J., concurring:
        I concur with the majority in result only.

_____, J.
Douglas