DEBORAH LESLEY, APPELLANT, *v.*
ELDON LESLEY, RESPONDENT.

No. 29116

June 17, 1997 941 P.2d 451

*Belanger & Plimpton,* Lovelock, for Appellant.

*Jack T. Bullock, II,* Winnemucca, for Respondent.

---

## OPINION

*Per Curiam:*

Appellant Deborah Lesley ("Deborah") and respondent Eldon Millard Lesley ("Eldon") were married on October 26, 1992, in Fresno, California. Thereafter, the couple resided near Winnemucca, Nevada.

Deborah avers that, on January 14, 1996, Eldon struck her with a closed fist in front of the couple's three minor children and threw a beer bottle at her. When she suggested that they attempt a trial separation, Eldon allegedly responded that if Deborah and the children were not at home when he returned from work he would find her, beat her, and take away the children permanently. Eldon also allegedly "raised his fist" to the couple's oldest child, six-year-old Allan.

On January 15, 1996, Deborah left the family home with the children, Allan, John, and James. Her parents and a counselor on the Nevada crisis line had apparently advised her to move away from Eldon. Deborah drove to her parents' house near Fresno, California.

On January 17, 1996, Deborah conferred with a California legal aid paralegal. Deborah filed documents in a Fresno County Superior Court seeking temporary custody of the children and a restraining order against Eldon. In those documents, Deborah revealed that she had moved to California two days earlier, and that her previous residence was in Nevada. The same day, Deborah secured an ex-parte temporary protective order from a Fresno County Superior Court judge. Deborah then filed for legal separation in California. According to Eldon, he was served with the California complaint for legal separation on March 15, 1996.

On March 18, 1996, Eldon filed a complaint for divorce in Humboldt County district court, along with a motion for a temporary custody order ("TCO"). On March 22, 1996, Judge Sullivan issued an ex-parte TCO and an order directing Deborah to return the children to Nevada. The complaint, summons, and motion were served upon Deborah on March 23, 1996. On April 2, 1996, Deborah received a copy of Judge Sullivan's orders by certified mail.

On April 2, 1996, Eldon, accompanied by a deputy sheriff, attempted to pick up his children at Deborah's residence in Fresno. Apparently, Deborah had moved out of the residence during the last several days of March. The following day, Eldon appeared before the mediation services of the Fresno County court in order to "tender" his Nevada documents. Deborah did not appear. Eldon also initiated an action with the child abduction unit of the Fresno County District Attorney's Office, seeking to enforce Judge Sullivan's orders.

On April 17, 1996, Eldon filed an application for default in Humboldt County. The following day, Judge Sullivan signed findings of fact, conclusions of law, and a default decree of divorce prepared by Eldon's counsel. The order granted the parties a divorce upon the grounds of incompatibility and awarded sole legal and physical custody of the three children to Eldon. Deborah was given visitation rights and directed to pay child support. The court also awarded Eldon all of his separate property and personal belongings as well as "[a]ll of the real and personal property currently in the possession of the Plaintiff in the State of Nevada." The court did not hold a prove-up hearing prior to signing the default judgment order.

Deborah testified that, on April 21, 1996, she called the Humboldt County courthouse to inquire about the status of Eldon's divorce complaint. The clerk's office notified her that she was legally divorced. The same day, Deborah contacted Roland Belanger ("Belanger"), her Nevada counsel. Apparently, he advised her to "get things going." However, she testified that she could not afford the legal fee and, because she had not yet received the written default judgment or had it explained to her by an attorney, she still believed that she could resolve the matters in California. Deborah testified that she did not receive a copy of the written default judgment until May 28, 1996.

On April 24, 1996, the Fresno court dissolved the temporary protective order issued in favor of Deborah.

In late May 1996, the Fresno district attorney notified Eldon that the children had been located, but that they remained in the custody of Deborah pending a hearing before a California court. On June 25, 1996, Deborah filed a motion in the Fresno court to set aside the dissolution of the temporary protective order. Apparently, the Fresno court denied this motion.

In late June 1996, Deborah recontacted Belanger. On July 3, 1996, Belanger filed the instant motion to set aside the default judgment. On August 5, 1996, a hearing on the motion was held before Judge Sullivan. At the beginning of the hearing, Belanger's law partner, Todd Plimpton ("Plimpton"), announced that he intended to have several witnesses testify in support of the motion. Plimpton and Eldon's attorney, Jack Bullock ("Bullock"), then made arguments on the motion. After these

arguments, Plimpton again requested to examine several witnesses before the court rendered its decision.

Judge Sullivan indicated that he was not inclined to allow the witnesses to testify. He stated that "if things had been done properly initially, there probably would have been a lot of evidence before this court that was not presented. . . . What you seek to do is reopen and start back at time one. . . ." The judge also suggested that the pleadings filed by Deborah included hearsay and insufficient evidence by way of affidavit.

The court then rendered its oral findings and denied the motion. It found that Deborah had not made the requisite showings of (1) mistake, surprise, inadvertence or excusable neglect, or (2) a meritorious defense. The court emphasized its displeasure with Deborah's attempts to resolve the matter outside of Nevada, the proper forum.

After announcing its decision, the court granted Plimpton permission to make an offer of proof. Several of Deborah's former neighbors then testified that she was a good mother, that Eldon physically and verbally abused his children and Deborah, and that Eldon sometimes drank to excess. Deborah testified that (1) Eldon physically and verbally abused her on several occasions—striking her on the head and giving her black eyes—in front of the children; (2) she had contacted numerous attorneys and paralegals upon her arrival in Fresno; (3) she was a high-school graduate and had never hired an attorney or paralegal prior to her involvement in the instant case; and (4) she was unaware of all her legal options and that she could have obtained low-cost legal representation in Nevada. She also stated that until she received a copy of the default divorce judgment, she believed that she could resolve all pertinent legal matters in California with a California lawyer. She also testified that she had used an inheritance to make a down payment on the home she lived in with Eldon and the children.

At the close of Deborah's testimony, the court denied Deborah's motion to reconsider its earlier ruling. On August 5, 1996, the district court issued its written order denying Deborah's motion to set aside the divorce default judgment. Deborah now appeals.

## DISCUSSION

Deborah contends that she satisfied all factors required to set aside a judgment under NRCP 60(b).[1]

---

[1]Eldon argues that the affidavits submitted by Deborah with her motion were insufficient to satisfy local and state rules of civil procedure. We conclude that the affidavits of Deborah and the pleadings set forth sufficient

NRCP 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . The motion shall be made within a reasonable time, and . . . not more than six months after the judgment, order, or proceeding was entered or taken.

Under NRCP 60(b), the district court has wide discretion in deciding whether to grant or deny a motion to set aside a judgment. Stoecklein v. Johnson Electric, Inc., 109 Nev. 268, 271, 849 P.2d 305, 307 (1993). However, this legal discretion cannot be sustained where there is no competent evidence to justify the court's action. *Id.*, 849 P.2d at 307.

When assessing an NRCP 60(b)(1) claim, the district court "must analyze whether the movant: (1) promptly applied to remove the judgment; (2) lacked intent to delay the proceedings; (3) demonstrated good faith; (4) lacked knowledge of procedural requirements; and (5) tendered a meritorious defense to the claim for relief." Bauwens v. Evans, 109 Nev. 537, 539, 853 P.2d 121, 122 (1993) (citation omitted). In rendering its oral decision denying Deborah's motion, the district court determined that Deborah had shown no meritorious defense. The court also indicated that Deborah had not filed her motion promptly, had an intent to delay the proceedings, and had acted in bad faith.

*Promptness*

In the case at bar, the district court entered a default judgment against Deborah on April 18, 1996, which Deborah testified that she received on May 28, 1996. Deborah filed her motion to set aside the default judgment on July 3, 1996. The record shows that she promptly consulted with a Nevada attorney upon her return to Nevada. We conclude that Deborah's NRCP 60(b)(1) motion was timely filed and that the district court erred by finding it untimely. *See* Petersen v. Petersen, 105 Nev. 133, 135, 771 P.2d 159, 161 (1989) (error for district court to dismiss motion to set aside decree of divorce filed 90 days after entry of judgment); NRCP 60(b) (six-month time limit).

---

allegations. *See* Sealed Unit Parts v. Alpha Gamma Ch., 99 Nev. 641, 643, 668 P.2d 288, 289 (1983); Jenkins v. Goldwater, 84 Nev. 422, 425, 442 P.2d 897, 899 (1968).

*Intent to delay the proceedings*

The record shows that Eldon filed his complaint for divorce on March 18, 1996. By that time, Deborah had already been in California for two months, gained temporary custody of her children, secured a temporary protective order, and filed for legal separation.

The record shows that Deborah remained in the Fresno area and attempted to resolve her legal issues there because she believed that she could resolve the pertinent issues in California. She based this on the advice of several California attorneys and paralegals. The record shows that Deborah had no prior experience with legal affairs and may have been unaware that Nevada had jurisdiction over the custody dispute and the divorce. The record shows that Deborah did not attempt to avoid service of process or to totally disregard the Nevada proceedings. Moreover, exactly one month after the filing of the divorce complaint, the Nevada court entered its default judgment. Thus, Deborah was not afforded a lengthy time to reply. There is virtually no evidence that Deborah intended to delay the divorce proceedings. We conclude that the district court erred by finding that Deborah had an intent to delay the proceedings.

*Good faith*

Deborah testified that due to legal advice she received in California, she believed that she could resolve the child custody and other divorce matters in California with California counsel. It appears that the district court did not give great weight to this testimony.

However, other than Deborah's failure to respond to the divorce complaint and her unwillingness to return to Nevada, there is little evidence that she acted in bad faith. Deborah contacted numerous attorneys and instituted legal action in California. We conclude that Deborah's actions do not show a "serious disregard of the judicial process" and that she has demonstrated adequate good faith. *See* Yochum v. Davis, 98 Nev. 484, 487, 653 P.2d 1215, 1217 (1982) (citing Gutenberger v. Continental Thrift and Loan Co., 94 Nev. 173, 576 P.2d 745 (1978)).

*Lack of knowledge of procedural requirements*

As noted above, Deborah contacted numerous California attorneys during her time in Fresno. Deborah testified that she was

under the impression that she could obtain a legal separation in California. The California courts bolstered her belief by issuing several orders in her favor. Deborah testified that she did not realize that she needed a Nevada attorney until she discovered that the default judgment had been entered against her. Deborah had not had previous experience with complicated legal matters. We conclude that Deborah made an adequate showing that she lacked knowledge of Nevada procedural requirements.

## Meritorious defense

The district court determined that Deborah did not show a meritorious defense. However, the district court focused its discussion of this issue on Deborah's unwillingness to return to Nevada. The court did not address whether Deborah had provided a defense to the underlying claim. *See generally* Kahn v. Orme, 108 Nev. 510, 516, 835 P.2d 790, 794 (1992) (addressing whether movant had defense to underlying claim). In an action involving child custody, the required meritorious defense factor is satisfied if the movant can show that the district court did not consider the best interests of the child before making the custody determination. *See* NRS 125.480. In the instant case, it appears that the district court did not conduct a hearing concerning the best interests of the children. Thus, we conclude that Deborah put forth a meritorious defense to Eldon's allegations.

## Policy considerations

When reviewing district court decisions on NRCP 60(b) motions, this court also examines whether the case should be tried on the merits for policy reasons. *See id.,* 835 P.2d at 794. This court has held that Nevada has a basic underlying policy that cases should be decided upon the merits. *Id.,* 835 P.2d at 794 (citing Hotel Last Frontier v. Frontier Prop., 79 Nev. 150, 155, 380 P.2d 293, 295 (1963)). Our policy favoring decisions on the merits is heightened in cases involving domestic relations matters. Price v. Dunn, 106 Nev. 100, 105, 787 P.2d 785, 788 (1990) (citing Dagher v. Dagher, 103 Nev. 26, 28, 731 P.2d 1329, 1330 (1987)).

An essential part of the case at bar is the child custody matter. When examining child custody arrangements, the focus is on the best interests of the minor child. Sims v. Sims, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993); *see also* NRS 125.480 (if court finds by clear and convincing evidence that one parent has committed domestic violence upon the other, a rebuttable presump-

tion is created that custody by perpetrator is not in best interests of child). Because a default judgment was entered in this case, the court has not engaged in an examination of the best interests of the three minor children nor of the parental fitness of Eldon and Deborah. Pursuant to the default judgment, the court awarded legal and primary physical custody to Eldon. Testimony and affidavits by Deborah and testimony of neighbors indicate that Eldon may have a propensity for violence and may have committed domestic violence upon Deborah. Thus, while these issues are properly resolved on an uncontested basis in the event of a default, they become pertinent on a motion to set aside a default judgment.

In its oral decision, it appears that the district court gave undue weight to Deborah's failure to return to Nevada, but insufficient weight to the best interests of the children. *See Sims,* 109 Nev. at 1149, 865 P.2d at 330 (''court may not use changes of custody as a sword to punish parental misconduct; disobedience of court orders is punishable in other ways'') (citation omitted). We conclude that public policy weighs in favor of hearing the instant action on the merits.

Given these circumstances, we conclude that the district court abused its discretion by refusing to set aside the default decree of divorce.[2] We reverse the order of the district court, which declined to set aside the default judgment, and remand to the district court for further proceedings in light of this opinion.

---

[2]Deborah also contends that the district court erred by awarding all the community property to Eldon. It appears that the district court should reconsider this issue on remand. *See* NRS 125.150; Lofgren v. Lofgren, 112 Nev. 1282, 926 P.2d 296 (1996).