**In re the MARRIAGE OF Tony MARCONI and Vilma Marconi.**

**Upon the Petition of Tony Marconi, Appellee,**

**And Concerning Vilma Marconi, Appellant.**

No. 97–2131.

Supreme Court of Iowa.

Sept. 23, 1998.

Mary K. Gourley of Legal Services Corporation of Iowa, Ottumwa, for appellant.

Martha L. Mertz of Mick, Mertz & McAllister, Knoxville, and Michael B. Brice, Oskaloosa, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This is an appeal from the district court's refusal to vacate a default dissolution-of-marriage decree. Jurisdiction over the respondent-wife was obtained by published notice, necessitated because she had fled the state

with the parties' child as a result of domestic abuse. So the dilemma facing the district court was plain. The respondent's flight and deliberate disappearance necessitated notice to her by publication, and her lack of awareness of the proceedings was the natural consequence. But the flight was precipitated by the petitioner-husband's misconduct in inflicting domestic abuse.

The district court's refusal to vacate was grounded in the rule that a mistake in judgment will not qualify as "unavoidable casualty," a recognized ground for vacating default judgments. The court premised this conclusion on a finding that Vilma's flight was a "mistake in judgment," and hence did not qualify as unavoidable casualty. We disagree and remand for trial the dissolution matter on its merits.

Respondent Vilma and petitioner Tony Marconi were married April 16, 1994. They have one child, Gianni, born October 5, 1995. Both have children from previous relationships, but of these only Vilma's seven-year-old daughter, Indira, lived with them.

The parties' marriage was tumultuous from the start. Tony was controlling, possessive, and abusive. Arguments were common and some of them resulted in physical violence. Although Tony disputes it, the evidence clearly supports the trial court's finding that Tony even threatened Vilma with a gun. Vilma testified the first gun incident was when she was pregnant with Gianni and the second was when Tony threatened to kill her if she ever left him or left with Gianni.

Other ominous evidence emerged at the hearing to vacate the default decree. On at least one occasion Vilma noticed bruises on Indira after returning home from work and therefore suspected Tony was physically abusing her. These suspicions were confirmed in May 1996 when the department of human services found Tony had physically abused Indira. The parties thereafter entered a family counseling program, though Tony rarely attended the meetings. Through the program Vilma was able to arrange protective day care for Indira and Gianni. She also received counseling and information on crises centers for abused women.

In August 1996 Vilma left home with Indira and Gianni because she was convinced Tony was a danger to her and the children. After a brief stay in a domestic violence shelter in Des Moines, she went first to Georgia before settling in South Carolina. Vilma did not tell Tony or her family where she and the children had gone. In the following months she retained some contact with her family by telephone, but never revealed her location for fear Tony would find her.

Tony tried hard to find Vilma and the children. He sought her through her family in Puerto Rico, her sister in Georgia, and mutual friends, all to no avail. Tony filed missing person reports with the police, sheriff's department, and federal authorities. He hired two private investigators, one in Des Moines and one in Puerto Rico.

In November 1996 Tony brought this dissolution proceeding. Because he did not know where Vilma was, notice of the suit was obtained by publication as authorized by Iowa rules of civil procedure 60.1 and 62. Because she was oblivious of the proceeding, Vilma never answered or appeared. A default decree was entered on February 28, 1997, awarding custody of Gianni to Tony. No child support was ordered. After the decree was entered, Vilma was charged with kidnapping and was later arrested in South Carolina on May 28, 1997. It was at this time she learned the existence of the default decree. The criminal charges were eventually dropped, but in the meantime Tony assumed Gianni's care.

A few weeks later Vilma filed a petition to vacate the decree alleging, among other things, unavoidable casualty or misfortune pursuant to Iowa rule of civil procedure 252(e) (making unavoidable casualty or misfortune a ground for vacating a judgment).[1]

---

1. Before a party may proceed under rule 252 it must be shown that the grounds for relief could not have been discovered in time to proceed under Iowa rule of civil procedure 236 (motion to set aside default). *See* Iowa R. Civ. P. 253(a). Here Vilma did not learn of the February 28, 1997 default decree until May 28, 1997, clearly more than the sixty-day time period in which to

It was Vilma's position that her fear for her safety required her to leave the marital home, and thus her inability to receive notice of the suit and appear at trial was an unavoidable casualty or misfortune.

Following a hearing the district court denied the petition to vacate. The court did find Vilma "had a good faith belief that [Tony] would harm her if [he] were to come into contact with her and her daughter." The court nevertheless concluded Vilma had intended to secrete herself from Tony and it was her choice to leave the State of Iowa. The court noted that Vilma could have obtained a restraining order, which the court felt "would have been eminently less harsh on the family unit" than uprooting Gianni and cutting off his contact with Tony. The court refused to find the "mistake in judgment" regarding available remedies constituted an unavoidable casualty.

Vilma appeals.

■ I. Trial courts are granted wide discretion in deciding whether to vacate a judgment under Iowa rule of civil procedure 252, and will not be reversed in the absence of an abuse of discretion. *In re Adoption of B.J.H.*, 564 N.W.2d 387, 391 (Iowa 1997). This deference of course does not extend to legal conclusions; concerning them our review is on error. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995).

■ Unavoidable casualty for rule 252 purposes means

some casualty or misfortune growing out of conditions or circumstances that prevented the party or [the party's] attorney from doing something that, except therefor would have been done, and does not include mistakes or errors of judgment growing out of misconstruction or misunderstanding of the law, or the failure of parties or counsel through mistake to avail themselves of remedies, which if resorted to would have prevented the casualty or misfortune.

*Mishler v. Stouwie*, 301 N.W.2d 744, 748 (Iowa 1981). Negligence is not an unavoid-

able casualty or misfortune. *Kreft v. Fisher Aviation, Inc.*, 264 N.W.2d 297, 304 (Iowa 1978). The defaulting party has the burden of showing that an unavoidable casualty or misfortune prevented him or her from defending the action. *Lemke v. Lemke*, 206 N.W.2d 895, 897 (Iowa 1973). The amount of evidence required to support an application to vacate a final judgment under rule 252 is greater than that necessary to warrant setting aside a default judgment under rule 236. *Davis v. Glade*, 257 Iowa 540, 546, 133 N.W.2d 683, 687 (1965); *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa App. 1986).

II. We have not considered whether flight to avoid domestic abuse, which prevents that party from defending a dissolution action, might be grounds for vacating a default judgment. Our court of appeals has held that an unavoidable casualty or misfortune justifies vacating a default judgment when the defaulting party was not to blame for the failure in defending the action. *See Hastings v. Espinosa*, 340 N.W.2d 603, 605–06 (Iowa App.1983) (no abuse in vacating default judgment as a result of unavoidable casualty or misfortune, where defendants reasonably relied upon agreement for extension of time to answer, defendants intended at all times to defend action, plaintiff suffered no prejudice as result of vacation of default, and defendants had prima facie meritorious defense). In an early case we found that, when the defaulting party had no knowledge of the suit, the default judgment should be vacated due to an unavoidable casualty or misfortune. *See Brewer v. Holborn*, 34 Iowa 473, 474–75 (1872). But when it was obvious that the defaulting party was to blame for the default, our courts have rejected a motion to vacate. *See, e.g., Kreft*, 264 N.W.2d at 299 (negligence by an employee causing foreign corporation's failure to appear was not unavoidable casualty).

■ Cases from other jurisdictions indicate that flight to avoid domestic abuse will support a decree to vacate a dissolution de-

file a motion to set aside a default judgment under rule 236. She therefore had no choice but

to proceed under rule 252.

cree. *See Hinson v. Hinson,* 518 S.W.2d 330, 333 (Mo.Ct.App.1975); *Lesley v. Lesley,* 113 Nev. 727, 941 P.2d 451, 455–56 (1997), *overruled on other grounds, Epstein v. Epstein,* 950 P.2d 771 (Nev.1997); *Graley v. Graley,* 174 W.Va. 396, 327 S.E.2d 158, 158–60 (1985). Under these authorities we think it is clear that the district court was authorized to vacate the dissolution decree on Vilma's application.

■ III. We conclude that the facts cannot support the trial court's refusal to vacate. We think Vilma's flight cannot be dismissed as a mere error in judgment. Testimony by Vilma, the report by the department of human services, and the many exhibits persuade us that Tony committed domestic violence upon her and Indira. Any abuse that would precipitate such a flight would certainly tend to skew the victim's judgment in the matter. We think the facts here clearly qualify as an unavoidable casualty under Iowa rule of civil procedure 252(e).

The court should have vacated the decree. The judgment of the trial court is reversed, and the case remanded for the trial of the case on its merits.

**REVERSED AND REMANDED.**