OPINION
 

 Per Curiam:
 

 Appellant Donni Sims and respondent John Sims were married
 
 *1147
 
 in 1975. On June 27, 1981, their daughter Kristine was born. In 1990 the couple divorced, agreeing that they would share joint legal and physical custody of Kristine, with Donni having primary physical custody subject to John’s having physical custody during school breaks and alternating holidays, as well as liberal visitation.
 

 In March, 1991, John filed a motion with the district court requesting primary physical custody of his daughter. He alleged, among other things, that Donni left their daughter home alone. In August, 1991, the domestic relations referee filed her report recommending that custody remain with Donni. However, the referee found that Kristine was spending time alone after school for one or two hours per day on frequent occasions and that “a ten-year-old child is too young to be left alone without adult supervision.” Therefore, the referee recommended an order that:
 

 [A]n adult must be present with the minor child at all times, and the child is not to be left alone for even 5 minutes. In addition, the child is to be within vision range of the responsible adult at all times.
 

 . . . The Referee further recommends that if the Referee finds in the future the child is still being left alone, the Referee will change physical custody to the father.
 

 The district court adopted the referee’s findings and recommendations and issued an order consistent therewith.
 

 In February, 1992, John renewed his motion to change custody on the principal ground that in November, 1991, Donni had left her ill ten-year-old daughter at home alone for several hours over a two- or three-day period in violation of the court order. Donni conceded that her daughter had been unsupervised for three one-hour periods during her illness, although she had otherwise made arrangements for continual supervision. An evidentiary hearing was held in March, 1992. A counselor who had talked to the child testified as follows:
 

 . . . What she explained to me, she was left home alone. She was sick, I believe, with the flu or wasn’t feeling well. On three separate dates she was left by herself. She had a phone close by. She said she liked to lie on the pillows, and she just lay there and was instructed to telephone if there was any problem, that her mother was at work.
 

 . . . She wasn’t sure about the time specifically. Her mother said about an hour when I spoke separately with her. hristine [sic] wasn’t sure at the time, but she didn’t report it was at any great length. She didn’t report any stress as a result of being left alone.
 

 
 *1148
 
 . . . No, she didn’t have any particular reaction to having been left alone. She told me at one point that she kind of liked it, and she had said that in response to a direct question. In general, I asked if this was sometimes scary or had been scary because it was something that was new to her, and I thought it would be unfamiliar to her or if she was masking some other feelings about it, or having some reaction, and she said, no, it was okay. She really wasn’t feeling well and wanted to be left alone.
 

 ... I understand there was a phone close by the bed. She wasn’t expected to be leaving her bed because she was there resting. She was to be lying down. If anything came up or any change in the feelings, she was to call her mother, and her mother would immediately come home from work.
 

 After the hearing the referee interviewed the child in chambers. The referee reported that the child said she had been left alone for substantial periods over a 3-day period and was “scared” when she heard a noise in the kitchen while alone. On August 27, 1992, the referee issued her report finding that the mother “flagrantly” violated the August, 1991, court order; that she couldn’t be trusted to comply with future orders of the same nature; that it was particularly “reprehensible” that the child had been left alone while ill and recommended that the father “be awarded primary physical custody of the minor child.” The district court again adopted the referee’s findings and recommendations and issued the order recommended. As a result, in September, 1992, Kristine moved to Virginia with John. Donni appeals, contending that the district court abused its discretion. We agree and reverse the judgment and remand the case for redetermination of child custody.
 

 DISCUSSION
 

 The trial court enjoys broad discretionary powers in determining questions of child custody. This court will not disturb the trial court’s determinations absent a clear abuse of discretion. Primm v. Lopes, 109 Nev. 502, 853 P.2d 103, 104 (1993). However, this court must be satisfied that the court’s determination was made for the appropriate reasons. In determining custody of a minor child, the sole consideration of the court is the best interest of the child. NRS 125.480. Based on the record before us, it appears that the determination that the custody should be changed was made, not because it was in the best interests of the child, but because the mother admittedly did not obey a questionable, if not absurd, court order.
 

 
 *1149
 
 This court has made it clear that a court may not use changes of custody as a sword to punish parental misconduct; disobedience of court orders is punishable in other ways. Dagher v. Dagher, 103 Nev. 26, 28 n.3, 731 P.2d 1329, 1330 n.3 (1987). Although the order signed by the district court judge recites that the change is in the best interests of the child, the entire thrust of the findings by the factfinder, the domestic relations referee, relates to the mother’s disobedience of the court’s prior order.
 

 The order that the mother failed to obey was questionable at best. That a normal, intelligent ten-year-old child should be “within vision range of the responsible adult at all times” and “not to be left alone for even 5 minutes” seems an absurd order. It is even more absurd that the penalty for violating that order is to lose custody of one’s child. It may not be ideal to leave a ten-year-old child with the flu at home alone for a few hours (albeit with telephone access) but it hardly smacks of a reason to lose custody. While we assume that the referee, in making that order, wanted to impress upon the mother the need for proper supervision, the court should not translate impractical parental advice into impractical court orders.
 

 The referee’s findings indicate that the mother’s disobedience of the order was virtually the only factor given weight in the referee’s determination that custody should be changed. That does not comport with our “best interests of the child” standard.
 

 Furthermore, the referee’s finding that leaving the child alone was “reprehensible” implies that the child was in either physical or psychological danger. We must believe that if the referee had truly been convinced that the child was in physical or psychological danger with the mother, she would have made the change in custody in March, 1992, immediately after the hearing, instead of waiting almost six months before even making her decision.
 

 Adding further weight to the arbitrariness of the decision to give physical custody to the father is the fact that the child is not even being raised by the father. He is an airline pilot and is away from home for days at a time. The father’s 69- or 70-year-old mother is raising the child. We are not suggesting that she doesn’t provide a good home, but the child’s mother is likely to be in a better position to provide the appropriate guidance to a pre-teen. (The child is now twelve.) The record indicates that the mother is a caring mother who has been trying to do the best for her daughter in the circumstances.
 

 
 *1150
 
 Furthermore, the district judge made a specific finding of fact that the almost six-month “delay between the time of the hearing and the rendering of the Decision by the Referee was not prejudicial, as the minor child was in school and thereafter on summer vacation, spending a substantial amount of time with her father over the summer.” This finding of fact suggests inadequate attention to the real impact that these decisions, and particularly the delay in these decisions, have on children’s lives. The result of the delay in this case was that the child spent the summer with her father and then custody was changed so that she also spent the school year with her father, thereby depriving the child from spending any significant time with her mother for a year — until the next summer. Time is more of the essence in these cases involving children than in any other cases and decisions should be made promptly after the close of evidence. Otherwise irreparable harm can be caused to the entire family, and especially the children. Leaving children and their families in limbo for months without allowing them to make appropriate plans is in no one’s best interests. For adults a few months may seem like a short time, but for children, a few months is a significant percentage of their lives. Top priority should be given to resolving their situations.
 

 For the reasons stated herein, we conclude that the district court abused its discretion in changing physical custody of Kristine in these circumstances. Accordingly, we reverse the district court’s order and remand the case for a full presentation of evidence and a redetermination of custody.