SHERI LYN HAYES, Appellant, v. HAROLD GAY
GALLACHER, III, Respondent.

No. 31191

February 12, 1999

972 P.2d 1138

*Keefer, O'Reilly, Ferrario & Lubbers* and *Anita A. Webster,* Las Vegas, for Appellant.

*Law Offices of Israel L. Kunin, P.C.* and *Rebecca L. Burton,* Las Vegas, for Respondent.

Before ROSE, C. J., YOUNG, MAUPIN and SHEARING, JJ.

## OPINION

By the Court, SHEARING, J.:

Sheri Lyn Hayes and Harold Gay Gallacher were married in 1987. In July 1995, Harold filed for divorce. Sheri and Harold have three minor children.

On November 13, 1995, the district court issued a divorce decree granting Sheri and Harold joint legal custody of their children. The district court granted primary physical custody to Sheri, subject to Harold's right of visitation twice during the week, on alternating holidays, and for two weeks during the summer.

In March 1997, Sheri married Shane Hayes, who is a member of the United States Air Force. The Air Force scheduled Shane to transfer to an air base in Japan effective no later than August 1997. Thus, on May 29, 1997, pursuant to NRS 125A.350,[1] Sheri petitioned the district court for an order allowing her to move to Japan with the children. In response, Harold filed a countermotion for a change of primary physical custody in the event Sheri moved to Japan.

On September 2, 1997, the district court entered an order (1) denying Sheri's motion to relocate the minor children to Japan and (2) granting Harold's countermotion to change primary physical custody of the children if Sheri moved to Japan. The order was entered without any evidentiary hearing, based on the written

---

[1]NRS 125A.350 provides:

If custody has been established and the custodial parent or a parent having joint custody intends to move his residence to a place outside of this state and to take the child with him, he must, as soon as possible and before the planned move, attempt to obtain the written consent of the other parent to move the child from the state. If the noncustodial parent or other parent having joint custody refuses to give that consent, the parent planning the move shall, before he leaves the state with the child, petition the court for permission to move the child. The failure of a parent to comply with the provisions of this section may be considered as a factor if a change of custody is requested by the noncustodial parent or other parent having joint custody.

record alone. The district judge entering the order was a different district judge than the one who originally heard the evidence regarding custody. Sheri has appealed the order denying relocation and the order granting Harold's countermotion for change of custody.

The district court made the following findings of fact:

1. It is in the best interest of the minor children to remain in Las Vegas.

2. Sheri's desire to move is due to her military spouse's transfer to Japan. Her motives therefore, are honorable and not designed to frustrate Harold's visitation rights.

3. Notwithstanding Sheri's honorable motives, she fails to justify relocation of the children to Japan under the standards set forth in Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1992). The court has concerns about the move to Japan such as that the children would be placed in a country where they do not speak the language, that they would lose contact with their extended family, that the available medical facilities would not be adequate in the event of an emergency medical situation, that the quality of the housing and environmental conditions in Japan is unknown, and that Sheri's overall financial situation would be reduced.

4. The cost of visitation transportation would be approximately $6,000 per round-trip ticket for the three children.

5. Any cultural advantages for the children could take place over a summer visit to Japan.

6. Harold's motive for resisting Sheri's relocation of the children halfway around the world is natural and also honorable.

7. If Sheri chooses to move to Japan, then Harold has met the standard under Murphy v. Murphy, 84 Nev. 710, 447 P.2d 608 (1974) for a change of circumstances.

The district court has broad discretionary power in determining questions of child custody, and this court will not disturb the district court's determinations absent a clear abuse of discretion. Primm v. Lopes, 109 Nev. 502, 504, 853 P.2d 103, 104 (1993). However, we must be satisfied that the court's determination was made for appropriate reasons. Sims v. Sims, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993).

We have construed NRS 125A.350 in several recent cases in which one parent had primary physical custody: Davis v. Davis, 114 Nev. 1461, 970 P.2d 1084 (1998); Gandee v. Gandee, 111

Nev. 754, 895 P.2d 1285 (1995); Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995); Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994); and Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). These cases establish a two-step process that the district court must undertake when deciding a motion to relocate pursuant to NRS 125A.350. First, the district court must find whether the custodial parent wishing to leave Nevada made a threshold showing of a sensible, good faith reason for the move. *Gandee,* 111 Nev. at 757, 895 P.2d at 1287.

If the custodial parent meets this threshold requirement, the district court must then weigh the factors as outlined in *Schwartz,* 107 Nev. at 383, 812 P.2d at 1271. Additionally, in *Trent* we determined that when considering the *Schwartz* factors, a district court should focus on the availability of adequate, alternative visitation. 111 Nev. at 315-16, 890 P.2d at 1313.

The present matter is particularly difficult because it does not fit into the traditional analysis outlined above. It appears that there is no adequate alternative visitation for the non-custodial parent, whether it is the father or the mother. There appears to be no dispute as to the good faith of either party. The custodial parent wishes to move with her family to be with her husband at his new assignment. However, the requested move is so far away from the non-custodial parent that frequent visitation is precluded and longer visits may be prohibitively expensive. Here, important interests and policies come into conflict: (1) the right of children to have frequent associations and a continuing relationship with both parents after a divorce, NRS 125.460(1); (2) the individual right of a parent to change his or her residence; and (3) the right of a parent to have access to his or her children. The decision in this case either requires that Sheri choose between her husband and her children, or that Harold risk losing physical contact with his children for a significant period of time. Whatever the decision, one party or the other, as well as the children, will be negatively impacted.

When parents cannot agree, this difficult custody decision must be made by the district court after it hears the evidence and applies the appropriate guidelines. Courts have applied a wide variety of approaches to a question like this, none of which are fully satisfactory. Some courts attach little value to the needs of the relocating parents; others ignore what may amount to substantial consequences to the non-moving parent. Still others weigh interests and values that are, at bottom, immeasurable.

On matters where relocation of the primary custodian would substantially obliterate the possibility of a traditional alternative

visitation, this court chooses to adopt the approach stated in Section 2.20 of the American Law Institute's Principles of the Law of Family Dissolution, (Tentative Draft No. 3, Mar. 20, 1998).[2] The parts of Section 2.20 relevant to this matter are:

§ 2.20 Relocation of a Parent

(1) The relocation of a parent constitutes substantially changed circumstances under this section only when it significantly impairs another parent's ability to exercise responsibilities that parent has been exercising under a parenting plan.

. . . .

(4) When the relocation constituting changed circumstances under paragraph (1) renders it impractical to maintain the same proportion of residential responsibility as that being exercised by each of the parents, the court should modify the parenting plan in accordance with the child's best interests, as defined in § 2.09 and § 2.10, and in accordance with the following principles:

(a) A parent who has been exercising primary residential responsibility for the child should be allowed to relocate with the child so long as it is for a legitimate purpose and to a location that is reasonable in light of the purpose. A relocation is for a legitimate purpose if it is to be close to family or other support networks, for significant health reasons, to protect the safety of the child or another member of the child's household, to pursue an employment or educational opportunity, or to be with one's spouse [or spouse equivalent, if such is defined in Chapter 6] who is established, or who is pursuing an employment or educational opportunity, in another location. The relocating parent has the burden of proving the legitimacy of any other purpose. A move with a legitimate purpose is reasonable unless its purpose is shown to be substantially achievable without moving, or by moving to a location that is substantially less disruptive of the other parent's relationship to the child.

. . . .

(d) The court should attempt to minimize the impairment to a parent-child relationship caused by a parent's relocation through alternative arrangements for the exercise of residential responsibility appropriate to the parents' resources and circumstances and the developmental level of the child.

---

[2]Although the draft has not been finally approved, it has been prepared by family law experts and has received careful consideration by family law practitioners over several years.

The relocation proposed here significantly impairs the other parent's ability to exercise the responsibilities he had been exercising. Therefore, it constitutes substantially changed circumstances which justify a reexamination of custody based on the best interest of the children, taking into account all relevant factors, including the effects of the relocation.

In this matter, the district court not only denied Sheri's motion to relocate, but also ordered that primary custody of the children be transferred from Sheri to Harold if Sheri chooses to move to Japan. The district court issued the orders without hearing any evidence regarding the relative merits of the parents as primary custodians. Furthermore, the district court made findings of fact contrary to the unrefuted evidence in the record regarding the quality of life at a military base in Japan. Also, the district court apparently failed to consider the application of NRS 125.480(4) which provides:

> In determining the best interest of the child, the court shall consider, among other things:
>
> . . . .
>
> (c) Whether either parent or any other person seeking custody has engaged in an act of domestic violence against the child, a parent of the child or any other person residing with the child.

The record reflects that Sheri had obtained a Temporary Protective Order Against Domestic Violence directed at Harold. After a hearing on the matter, the district court found that violence had occurred and extended the protective order against Harold for one year. Under NRS 125.480(5), if domestic violence is proven, a rebuttable presumption arises that sole or joint custody of the child by the perpetrator of the domestic violence is not in the best interest of the child. It does not appear that the district court gave any consideration to the issue of domestic violence when denying Sheri's motion to relocate and ordering the change of custody of the children to Harold. Therefore, the orders of the district court must be reversed and remanded for consideration of the relevant evidence.

An order changing primary custody if the primary custodian chooses to move after the court denies a motion to relocate appears to be designed to punish the primary custodian for relocating. The punitive nature of the order in this case is made clear

by the fact that it changes custody without any provision for Sheri, who has been primary custodian, to have contact with the children. This court has made it clear that Nevada courts may not use changes of custody as a sword to punish perceived parental misconduct. Sims v. Sims, 109 Nev. 1146, 1149, 865 P.2d 328, 330 (1993).

In this case, the public policy considerations make the district court's conditional order particularly unacceptable in that it is designed to test the maternal attachment by forcing Sheri to choose between her children and her husband. Such conditional orders changing custody should be made only if the court affirmatively determines that the best interests of the child are served by the change in custody, taking into consideration all factors, not just the move. ALI, *supra*, § 2.20(4). Thus, even if a relocating parent is moving for illegitimate reasons or to an unreasonable location, that parent should retain primary custody and be allowed to relocate with the child if he or she shows that the relocation would be better for the child than a transfer of primary custody to the other parent. ALI, *supra*, § 2.20 cmt. b. Primary custody should not be given to a parent who is not able or fit to exercise this right, or whose relationship with the child is such that the modification is not in the child's best interest. *Id.*

The district court issuing the conditional order transferring custody to Harold heard no evidence regarding the best interest of the children. Further, it does not appear that the district court considered the indications of domestic violence by Harold, or other factors considered by the original district court judge who determined that the best interest of the children was to grant primary custody to Sheri. Therefore, the district court order denying relocation and changing custody of the Hayes children is reversed and remanded for reconsideration in accordance with the appropriate standards.[3]

ROSE, C. J., YOUNG and MAUPIN, JJ., concur.

---

[3]This matter was submitted for decision prior to expansion of the court from five to seven justices on January 4, 1999; only those justices remaining on the court who previously heard this matter participated in the decision.