APRIL RABURN MARTIN, Appellant, v.
JAMES LEE MARTIN, Respondent.

No. 37581

June 10, 2004

90 P.3d 981

*April Raburn Martin,* Pahrump, in Proper Person.

*Carl M. Joerger,* Pahrump, for Respondent.

Before Rose, Maupin and Douglas, JJ.

# OPINION

*Per Curiam:*

This proper person appeal arises from a custody dispute between appellant April Martin and respondent James Martin over the parties' twelve-year-old child. The district court granted James's motion to change primary physical custody based on changed circumstances. These changed circumstances included James's remarriage and April's alleged interference with James's visitation with the child.

We conclude that remarriage alone does not establish changed circumstances. Consequently, the district court erred in finding changed circumstances on that basis. Additionally, although a custodial parent's substantial or pervasive interference with a noncustodial parent's visitation could give rise to changed circumstances warranting a change in custody, the record in this case does not support a determination that April substantially or pervasively interfered with James's visitation. Accordingly, we reverse the district court's order.

## FACTS

The Martins were divorced in Kentucky in 1998. At that time, they entered into a child custody agreement under which they would share joint legal custody of their child, April would have primary physical custody and James would have visitation. James's visitation included one month each summer, and every other holiday and birthday. After the divorce, April and the child moved to Nevada, and James moved to North Carolina. James, who is in the military, has remarried, and his new wife has three young children from a prior marriage.

In October 2000, James, through counsel, moved the Nevada district court to modify child custody and support. According to James, April was in a physically abusive relationship, which posed a threat to the child's safety. He also insisted that the child suffers from seizures, and that April was not properly caring for the child's condition. James further contended that because April worked in Las Vegas, she only spent weekends with the child. According to James, the rest of the week the child was in the care of April's mother, with whom April and the child were living, in Pahrump, Nevada. James also asserted that he was having difficulty contacting the child by telephone, although he did not specify how many times he attempted to telephone the child without getting through. James did state that he regularly communicates with the child via e-mail.

April, through her counsel, opposed James's motion. April contended that the child does not suffer from seizures. She also insisted that she was not in an abusive relationship, that she had broken up with her boyfriend, and that James had physically abused her during their relationship. In addition, April contended that James was often away from his home for months at a time because of his military service. According to April, it was unfair for the child to live with a stepmother and stepsiblings, essentially strangers, while James was away. April further asserted that James rarely telephoned the child, and when he did, he only spoke to the child briefly, then spoke with April in order to argue. Finally, April maintained that since the divorce, James had only exercised visitation with the child twice and was seven months behind in child support.

The district court conducted a hearing on James's motion. The record reveals that during the hearing, James's counsel, for the first time, argued that April was denying James visitation with the child. James's counsel also asserted that on one occasion when James telephoned to speak with the child, April's boyfriend answered the phone and instructed James not to call again.

After the hearing, the district court granted James's motion to change custody and ordered April to pay child support at the statutory minimum, $100 per month. In its written order, the district court found ''changed circumstances'' warranted changing custody on the basis that April had interfered with James's visitation, that James had remarried, and that both parents had moved from Kentucky.

The district court also found that it was in the child's best interest to live with James, because he was more settled than April and could provide the child with a more suitable and stable home environment. The district court acknowledged that April had ended her relationship with her boyfriend and had moved in with her mother. Still, the district court found April's home environment ''unsettled'' and ''awkward'' because she had moved from her boyfriend's house to her mother's home and was planning to move to Las Vegas to be closer to her job. The court found that James offered a better home environment for the child since James is a career soldier and because his new wife would be a good stepmother. April timely appealed.

## DISCUSSION

Matters of custody, including visitation, rest in the district court's sound discretion.[1] This court will not disturb the district court's child

---

[1] *Wallace v. Wallace,* 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996).

custody determination absent a clear abuse of discretion.[2] A change of primary physical custody is warranted only when: (1) the parent's circumstances have been materially altered, and (2) the child's welfare would be substantially enhanced by the change.[3]

In granting James's motion to change custody, the district court found "changed circumstances" on three grounds: (1) April had interfered with James's visitation and communication with the child; (2) James had remarried; and (3) both parties had relocated from Kentucky, where the divorce decree was entered. Neither party argued in the district court that relocating from Kentucky constituted a change in circumstances.[4]

This court has not previously decided whether a custodial parent's interference with a noncustodial parent's visitation may constitute changed circumstances.[5] Other courts that have examined the issue have concluded that the custodial parent's substantial or pervasive interference may constitute changed circumstances.[6]

In his motion to change custody, James generally claimed that when he tried to telephone the child at April's mother's house, he was unable to get through. James did not assert that April consistently obstructed his attempts to telephone the child, nor did he contend that April withheld physical visitation with the child. James also stated that he and the child engaged in e-mail contact. Even so, during the hearing on James's motion to modify custody, James vaguely asserted for the first time, but without further explanation, that April was denying him visitation. James also brought

---

[2]*Sims v. Sims,* 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993).

[3]*Murphy v. Murphy,* 84 Nev. 710, 711, 447 P.2d 664, 665 (1968).

[4]*See Hayes v. Gallacher,* 115 Nev. 1, 6, 972 P.2d 1138, 1141 (1999) (recognizing that in the context of relocation cases, moving does not constitute changed circumstances that warrant a change in custody unless the move would significantly impair the noncustodial parent's ability to maintain a relationship with the child).

[5]We note that interference by a custodial parent with a noncustodial parent's visitation privileges does not necessarily give rise to parental alienation syndrome. *See* Carol S. Bruch, *Parental Alienation Syndrome and Parental Alienation: Getting It Wrong in Child Custody Cases,* 35 Fam. L.Q. 527, 534 (2001).

[6]*See, e.g., Kelly v. Joseph,* 46 P.3d 1014, 1017 (Alaska 2002) (recognizing that substantial interference with the noncustodial parent's visitation rights by a custodial parent constitutes changed circumstances); *Hicks v. Alford,* 576 S.E.2d 410, 414 (N.C. Ct. App. 2003) (providing that "pervasive" interference with the noncustodial parent's visitation rights constituted a substantial change in circumstance that warranted a change in child custody).

up the one occasion during which April's boyfriend told him not to call again.

The record does not support a determination that April's alleged conduct rose to the level of substantial or pervasive interference with James's visitation to warrant a change in circumstances. Thus, the district court abused its discretion when it found changed circumstances based on April's alleged interference with James's visitation rights.

As for James's remarriage as a basis for changing the child custody arrangement, most courts have concluded that remarriage alone is not enough to establish changed circumstances.[7] We agree with these courts because if remarriage alone could signify a change in circumstances, then children's home environments could be destabilized solely on that basis. Stability is one of the primary objectives behind the changed circumstances requirement, and children's stability should not be disturbed simply because the noncustodial parent has been remarried.[8] Consequently, James's remarriage alone is not enough to establish changed circumstances.[9]

Accordingly, we reverse the district court's order changing child custody and awarding child support to James.[10]

---

[7]*See, e.g., Monteleone v. Monteleone,* 591 So. 2d 1228, 1235 (La. Ct. App. 1991) (stating that "remarriage of the noncustodial parent and the superiority of the stability of that parent's new, daily environment, [is not,] by itself, a compelling reason to uproot a child from his or her present environment"); *Pitt v. Olds,* 511 S.E.2d 60, 61 (S.C. 1999) (noting that remarriage alone is insufficient to warrant a modification of a child custody arrangement).

[8]*See Castle v. Simmons,* 120 Nev. 98, 86 P.3d 1042, 1047 (2004).

[9]Under *Murphy* there must be changed circumstances *and* the proposed change in custody must substantially enhance the child's welfare. 84 Nev. at 711, 447 P.2d at 665. As we conclude that the district court abused its discretion with respect to changed circumstances, we do not need to reach the child's "best interest" considerations under the *Murphy* test.

[10]On April 11, 2001, this court entered a stay pending appeal. In light of this opinion, we vacate that order.