140 Nev., Advance Opinion 73

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JENNIFER MARIE MARTINEZ, Appellant, vs. PAUL GILBERT MARTINEZ, Respondent. | No. 84148 |

**FILED**

NOV 27 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order modifying child custody and child support. Eighth Judicial District Court, Family Division, Clark County; Rhonda Kay Forsberg, Judge.

*Affirmed in part, reversed in part, and remanded with instructions.*

Willick Law Group and Marshal S. Willick, Las Vegas; The Abrams & Mayo Law Firm and Jennifer V. Abrams, Las Vegas,
for Appellant.

Roberts Stoffel Family Law Group and Melvin R. Grimes, Las Vegas,
for Respondent.

Pecos Law Group and Shann D. Winesett, Henderson,
for Amicus Curiae State Bar of Nevada, Family Law Section.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, BELL, J.:

The Nevada Legislature has enacted a statutory scheme, supplemented by comprehensive regulations adopted by the Division of

SUPREME COURT
OF
NEVADA

24-45380

Welfare and Supportive Services of the Department of Health and Human Services, to guide courts in determining a parent's child support obligation. One area of these provisions that has remained unclear is the adjustment required, if any, to a parent's child support obligation based on transportation costs. In this case of first impression, we clarify that transportation costs incurred in ensuring a child spends time with both parents must be considered in determining a parent's child support obligation under NAC 425.150.

*FACTS AND PROCEDURAL HISTORY*

Paul Martinez and Jennifer Martinez were divorced in California in 2015. At that time, Paul suffered seizures and short-term memory loss due to an ongoing illness and agreed Jennifer should receive primary physical custody of their then-three-year-old child, L.M. Paul and Jennifer shared joint legal custody. Because of Paul's history of seizures, Paul's visits with L.M. during the first four months following the divorce were supervised; however, Paul subsequently submitted evidence of health improvements, and the California court held a hearing concerning the visitation and allowed unsupervised visits. At the same hearing, the California court granted Jennifer's motion to relocate with L.M. to Nevada. Following the move, Jennifer failed to comply with the terms of visitation, resulting in a bench warrant. Following the bench warrant for Jennifer, Paul requested a custody evaluation. Dr. Douglas Smith evaluated both parents and submitted a written report to the court. Dr. Smith reported some concerns, mainly that Paul's short-term memory fell in the bottom fifth percentile for his age, but otherwise spoke quite highly of both parties' parenting abilities.

(O) 1947A

The California court "adopted" Dr. Smith's report, maintaining joint legal custody and primary physical custody with Jennifer. Under the court's custody order, Paul was entitled to visitation one weekend per month. The parties were to split transportation costs equally and were ordered to mediate. After further litigation, in 2020, Paul and Jennifer stipulated that the ongoing custody matter be transferred to Nevada.

After Nevada assumed jurisdiction and the parties failed to participate in mediation, Paul moved for primary physical custody. Paul also requested Jennifer bear all costs associated with transporting L.M. for visitation, as she had moved from California. Jennifer filed a countermotion requesting Paul's visitation be supervised until he underwent neurological testing.

The district court denied Paul's motion for primary physical custody, finding no substantial change in circumstances warranting reconsideration of who had primary physical custody. The district court also denied Jennifer's countermotion for supervised visitation and modified the parenting schedule to provide increased visitation to Paul. Later, after an evidentiary hearing, the district court found that increased visitation was in L.M.'s best interest. The district court also ordered Jennifer to pay all costs of L.M.'s transportation to visit Paul, noting "[s]ince it was Mom who moved away from California to Nevada, she will be responsible for the costs of travel depending on if the parties agree to fly or drive the child." Jennifer filed a motion to alter or amend the district court's determination, which was denied.

Jennifer appealed, challenging the district court's decisions to impose all transportation costs on her and to grant Paul additional visitation, and the court of appeals affirmed the district court's order. *See Martinez v. Martinez*, No. 84148-COA, 2023 WL 2622100 (Nev. Ct. App.

(O) 1947A

Mar. 23, 2023) (Order of Affirmance). Jennifer petitioned for this court's review pursuant to NRAP 40B. We granted the petition, ordered supplemental briefing, and invited amicus curiae briefing on the issue of whether child support obligations should be adjusted based on determined transportation costs.

## DISCUSSION

When a court of this state makes an initial determination of child support obligations, the amount is determined by guidelines established by the Administrator of the Division of Welfare and Supportive Services of the Department of Health and Human Services pursuant to NRS 425.620. NRS 125B.080(1). The matter before this court is whether transportation costs must be considered under NAC 425.150 in deciding whether to adjust that initial amount. We additionally review whether the district court properly modified visitation. We hold the following: First, transportation costs can affect a child support obligation based on the factors listed in NAC 425.150(1) and should be considered as part of the overall child support determination; and second, the district court did not abuse its discretion in modifying visitation.

*Transportation costs must be considered in determining child support*

The Nevada Administrative Code provides a formula for determining a parent's base child support obligation. *See* NAC 425.140. If a court wishes to deviate from that baseline obligation, the court may adjust the amount based "on the specific needs of the child and the economic circumstances of the parties," as guided by eight enumerated factors and specific findings of fact. NAC 425.150. One of the eight factors listed in NAC 425.150 supporting adjustment is "[t]he cost of transportation of the child to and from visitation." NAC 425.150(1)(e).

Although we review a district court's decision regarding child support obligations for an abuse of discretion, *Flynn v. Flynn*, 120 Nev. 436, 440, 92 P.3d 1224, 1227 (2004), we review questions of law de novo, *Moseley v. Eighth Jud. Dist. Ct.*, 124 Nev. 654, 662, 188 P.3d 1136, 1142 (2008). "When reviewing de novo, [this court] will interpret a statute or regulation by its plain meaning unless . . . the plain meaning would provide an absurd result, or the interpretation clearly was not intended." *Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020) (internal quotation marks omitted). This court reads unambiguous statutes as a whole and attempts to give each word and phrase effect. *JED Prop. v. Coastline RE Holdings NV Corp.*, 131 Nev. 91, 94, 343 P.3d 1239, 1240-41 (2015). Regulations are interpreted in the same manner as statutes. *Silver State Elec. Supply Co. v. State ex rel. Dep't of Tax'n*, 123 Nev. 80, 85, 157 P.3d 710, 713 (2007).

Despite the comprehensive scheme regulating adjustments to child support, the district court ordered Jennifer to pay the entirety of travel costs based solely on Jennifer's relocation nearly five years prior, without reference to NAC 425.150, the parties' financial situations, or the already-established child support obligations. This was error. Relocation alone is not a proper consideration for determining transportation costs. Because transportation costs are expressly included in NAC 425.150, those costs cannot be imposed outside that regulatory scheme. Other jurisdictions have likewise concluded that mandatory transportation costs cannot be considered separately from a parent's overall child support obligation. *See Tibor v. Tibor*, 623 N.W.2d 12, 18-19 (N.D. 2001) (affirming the district court's downward deviation in child support because a parent incurred all travel costs); *Bowers v. Bowers*, 956 S.W.2d 496, 499-500 (Tenn. Ct. App. 1997) (adjusting child support based on the imposition of travel costs).

(O) 1947A

Considering that NAC 425.150 plainly contemplates deviations to child support based on transportation costs, we conclude that transportation costs are part of the child support analysis. Accordingly, transportation costs cannot be ordered separately.

Matkulak *does not apply to the facts at hand*

Paul suggests the imposition of transportation costs is justified as a separately ordered cost, unconstrained by NAC 425.150, in accordance with *Matkulak v. Davis*, 138 Nev., Adv. Op. 61, 516 P.3d 667, 670-71 (2022). Paul's suggestion is based on other recent court of appeals cases applying *Matkulak. E.g., Solinger v. Solinger*, No. 84832-COA, 2023 WL 3031655, at *4 (Nev. Ct. App. Apr. 20, 2023) (Order Affirming in Part, Reversing in Part, Vacating in Part and Remanding) ("The Nevada Supreme Court has concluded that separately ordering a parent to pay costs related to childcare, extracurricular activities, and health insurance removes these costs from consideration of child support for the purposes of NAC 425.150(1)."). This argument misconstrues *Matkulak.*

*Matkulak* considered only whether the district court could use expenses that the court had already separately assigned to the father to support an upward deviation from the father's base child support calculation. 138 Nev., Adv. Op. 61, 516 P.3d at 671 ("[A]lthough the court found that [the child] had expenses related to childcare, extracurricular activities, and health insurance, the court separately ordered Matkulak to pay for those expenses, removing them from consideration for purposes of NAC 425.150(1)."). This court determined those extra expenses could not be used as a basis for an additional upward deviation from the father's statutory child support obligation (essentially counting them twice).

*Matkulak* addressed a different situation and does not apply here. The plain text of NAC 425.150 contemplates transportation costs as

part of an overall child support analysis. While courts routinely make separate orders for child-related expenses apart from the order setting the base child support obligation, failing to consider the expenses listed under the NAC 425.150 factors risks depriving litigants of the protections afforded to them under the framework governing child support. NAC 425.150(1) requires "[a]ny child support obligation" be adjusted based on eight provided factors, including transportation costs. Because transportation costs are specifically enumerated, we hold that the district court may not impose transportation costs separately without determining the impact on the overall child support obligation.

*Application of the NAC 425.150(1) factors should be reasonable*

NAC 425.150 requires district courts adjusting child support to examine "the specific needs of the child and the economic circumstances of the parties" based on the enumerated factors. We have implicitly recognized reasonableness as a requirement in evaluating the factors under NAC 425.150. In *Herz v. Gabler-Herz*, this court upheld a deviation from the child support formula because the amount awarded to the parties by the district court was "fair and equitable." 107 Nev. 117, 119, 808 P.2d 1, 1 (1991) (internal quotation marks omitted). In *Fernandez v. Fernandez*, this court explained the equitable and protective purposes of child support:

> The formula and guideline statutes are not designed to produce the highest award possible but rather a child support order that is adequate to the child's needs, *fair to both parents*, and set at levels that can be met without impoverishing the obligor parent or requiring that enforcement machinery be deployed.

126 Nev. 28, 37, 222 P.3d 1031, 1037 (2010) (emphasis added).

Here, the district court's order awarded travel costs separate from the child support obligation based entirely on Jennifer moving five

years earlier. The order does not consider the specific needs of the child in this case, the economic circumstances of the parents, or the overall child support award. While one party's insistence on a particular mode of transportation might be considered when allocating transportation costs, the district court's order does not fully address that issue. Accordingly, we reverse the district court's order imposing the full cost of transportation on Jennifer and remand the matter to the district court to apply the NAC 425.150 framework when allocating transportation costs.

*The district court did not abuse its discretion in modifying visitation*

Jennifer contends the district court abused its discretion in modifying the parties' visitation schedule beyond what the parties had sought, violating her due process rights. In this case, the parties expressly sought resolution of two issues related to visitation: first, modification of the parties' parenting-time schedule, specifically regarding an increase in Paul's time with L.M. during the summer; and second, Paul's ability to have unsupervised visitation prior to neurological testing. Jennifer asserts she and Paul had agreed to a visitation schedule other than the specific points of contention. Even so, the district court found L.M.'s best interest would be served by making broader changes with respect to visitation and ordered L.M. to visit Paul roughly in accordance with a standard out-of-state visitation plan. *See generally* NRS Chapter 125C.

The district court enjoys wide discretion in custody matters, and here the district court supported its visitation order with explicit findings following NRS 125C.0035(4). *See Hayes v. Gallacher*, 115 Nev. 1, 4, 972 P.2d 1138, 1140 (1999) (stating that, although the district court's decision will not be disturbed absent clear abuse of discretion, this court "must be satisfied that the court's determination was made for appropriate reasons"). While we review factual determinations of the court for abuse of

discretion, we review any questions of law de novo. *See Martin v. Martin*, 138 Nev., Adv. Op. 78, 520 P.3d 813, 817 (2022).

We note that Jennifer did not provide the visitation agreement to this court for review. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) ("When an appellant fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision."). We do not encourage district courts to deviate from custody arrangements agreed to by both parents; however, absent a clear record of an agreement and a showing of abuse of discretion by the district court, we decline to disturb the district court's award of visitation.

Further, to the extent Jennifer contends that her due process rights were violated when the court modified visitation, we conclude that argument lacks merit. "[P]rocedural due process requires notice and an opportunity to be heard." *Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007) (internal quotation marks omitted). A party's due process rights may be violated if the parties are not provided notice that the court will be considering a specific issue, such as visitation. *Cf. Wallace v. Wallace*, 112 Nev. 1015, 1020, 922 P.2d 541, 544 (1996) (holding that the district court violated a party's due process rights when the party had no notice that the court would be considering the specific issue of visitation). Here, Jennifer does not demonstrate a lack of notice or lack of an opportunity to be heard on the issue of visitation. First, Jennifer herself put the specific issue of visitation before the district court, seeking to have Paul's visitation supervised indefinitely. Second, during the evidentiary hearing, Jennifer testified at length on her thoughts regarding visitation. Finally, Jennifer had the opportunity to present evidence about visitation and did so. Because Jennifer had notice and an opportunity to be heard,

Jennifer's due process rights were not violated when the court modified visitation.

Nevada law allows a district court to modify its custody order consistent with a child's best interest "upon the application of one of the parties" and does not limit courts to a particular remedy. NRS 125C.0045(1)(b). *See Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009) (stating that when parties move to modify custody, courts must apply Nevada law in their ultimate custody determination), *overruled on other grounds by Romano v. Romano*, 138 Nev. 1, 4, 501 P.3d 980, 982 (2022). Here, Jennifer sought modification of the existing custody order. Paul sought primary custody of the child during this dispute, placing Jennifer on notice that Paul desired increased contact with the child. Awarding increased visitation after a hearing regarding custody and visitation is squarely within the scope of potential outcomes in this case.

To the extent Jennifer's petition raises a related but slightly different issue—that the district court's decision to proceed with an evidentiary hearing without requiring Paul to provide a neuropsychological assessment or medical records violated the law of the case doctrine—this argument is also not persuasive. Jennifer's argument rests on the bare contention that the district court deviated from a prior order for Paul to complete a neurological evaluation. The court made no such order and heard no evidence on Paul's health—excepting Dr. Smith's report, which Jennifer had access to—before issuing an order on February 18, 2021, directing Paul's counsel to provide Paul's medical records. The district court later clarified that Paul was required to provide existing medical records regarding his neurological health only.

Both parties had adequate notice and opportunity to be heard on the issue of visitation. There was no due process violation.

*Substantial evidence supports the district court's order*

Relatedly, Jennifer suggests the district court's order granting Paul additional, unsupervised visitation is not supported by substantial evidence and must be reversed. We disagree. "The district court has broad discretionary power in determining questions of child custody, and this court will not disturb the district court's determinations absent a clear abuse of discretion." *Hayes*, 115 Nev. at 4, 972 P.2d at 1140. Still, substantial evidence must support the district court's findings. *Ellis v. Carucci*, 123 Nev. 145, 150, 161 P.3d 239, 242 (2007). Substantial evidence "is evidence that a reasonable person may accept as adequate to sustain a judgment." *Id.*

Primarily, this court discerns no error in the district court's finding, based on its review of the evidence, that neither Jennifer nor Paul possessed fundamental deficiencies in parenting abilities. Any alternative visitation agreement is not before us. The district court's order granting a commonly used visitation plan for Paul and Jennifer is supported by substantial evidence. That evidence shows that both parents can adequately care for L.M. yet struggle in practice to equitably share custody. Jennifer has attempted to thwart and limit Paul's visitation. The parties were ordered to mediate but failed to do so, and this matter has remained contentious for nearly a decade. Both sides levy various claims of legal misconduct against the other, further raising questions regarding the appropriateness of the prior arrangement.

We specifically note that the district court's finding that Paul is medically fit to have unsupervised visitation with L.M. was supported by substantial evidence: two doctor notes asserted Paul's capacity to parent,

Paul cared for his six-month-old son alone, and Paul testified at length during the evidentiary hearing at issue and gave the court no cause for concern. To the extent Jennifer challenges specific findings from the district court, arguing they are not supportable by the weight of the evidence, we perceive no error. We affirm the district court's conclusion that a standard visitation schedule should apply.

*We decline to consider the remaining claims*

Though the issue of attorney fees was discussed in the district court, Jennifer did not provide any argument or authority on that matter to this court on appeal. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 329 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating we need not consider claims that are not cogently argued or supported by relevant authority). Accordingly, we will not consider these claims.

Additionally, Paul requested this court sanction Jennifer pursuant to NRAP 38 for filing a frivolous petition for review. Issuing sanctions is generally based on our discretion after determining whether the issues raised on appeal were meritorious or had arguable relevance to the issues at hand. *See Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 95, 787 P.2d 777, 781 (1990) (declining to apply sanctions where several of the appellant's arguments raised in his briefs had arguable relevance to the "broad" issues raised by the appeal). Because we found that Jennifer's argument regarding transportation costs was meritorious, we decline to sanction Jennifer pursuant to NRAP 38.

## CONCLUSION

In the present child custody matter, the district court failed to consider transportation costs as an aspect of child support obligations and required Jennifer to pay all costs without setting forth a reasonable basis for so doing. Thus, we reverse the portion of the order imposing

transportation costs on Jennfier and remand the matter for further proceedings. On remand, the district court should make express findings under NAC 425.150 to determine whether to adjust either parent's child support obligations based on reasonable transportation costs. As to the rest of the order, perceiving no error, we affirm the judgment of the district court.

_____, J.
Bell

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

13